2009 VT 91

**Stamp Tech, Inc., By and Through Its Assignee, Peter H. Blair v. Lydall/Thermal Acoustical, Inc.**

[987 A.2d 292]

No. 07-494

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 4, 2009

*Steven A. Adler* and *James M. LaMonda* of *Axelrod & Adler, PLLC*, St. Johnsbury, for Plaintiff-Appellant.

*John Paul Faignant* of *Miller & Faignant, P.C.*, Rutland, for Defendant-Appellee.

¶ 1. **Johnson, J.** Plaintiff Peter Blair, an injured worker, appeals from two decisions of the Caledonia Superior Court in favor of his empoyer Lydall/Thermal Acoustical, Inc. Plaintiff's arm was crushed by an industrial press while he was working as a temporary employee at Lydall's St. Johnsbury plant. His suit against Lydall was based on two theories. First, plaintiff sought to collect from Lydall a $750,000 stipulated judgment entered in his favor against Stamp Tech, Inc., a firm that Lydall had hired to install safety devices on the press, claiming that Lydall had expressly agreed to indemnify Stamp Tech for such a liability. Second, plaintiff alleged that Lydall intentionally injured him by, among other acts, removing a hard guard on the machine, which made plaintiff's continued use of the machine certain to result in injury. The superior court's first decision granted Lydall's motion for partial summary judgment on the contractual indemnity issue. In the second decision, the superior court granted Lydall's motion for summary judgment on the intentional tort issue, holding that plaintiff's common law tort claim against Lydall was barred by the exclusivity provisions of Vermont's Workers' Compensation Act. We conclude that, in both of its decisions, the superior court prematurely resolved disputed issues of material fact; therefore, we reverse and remand.

¶ 2. The record before the superior court on these summary judgment motions revealed the following facts. Lydall purchased a Komatsu 200-ton press machine and hired Stamp Tech, a Connecticut corporation, to install safety guards, known as light curtains, required for Lydall to operate the press in accordance with applicable worker-safety regulations. According to the record, light curtains project an infrared beam that, if penetrated, will stop the press to avoid injury to those operating the machine. Stamp Tech's technicians made two visits to Lydall's facility in St. Johnsbury to assess the press and to install the light curtains. The parties dispute whether Lydall installed an additional hard

guard on the press between Stamp Tech's visits and whether the hard guard was in place at the time of plaintiff's accident.

¶ 3. After being injured, plaintiff initially sued Stamp Tech, alleging that Stamp Tech's negligence in installing the light curtains resulted in his injuries. Stamp Tech reached a settlement with plaintiff. There appears to be no dispute that, before plaintiff and Stamp Tech reached a settlement, Lydall received notice of the suit and the settlement negotiations. Lydall declined to participate in the settlement negotiations because it disputed the validity of the indemnification agreement of which Stamp Tech claimed to be the beneficiary. Pursuant to the settlement agreement, Stamp Tech accepted a judgment of $750,000 against it. Stamp Tech was apparently judgment-proof; therefore, plaintiff agreed not to execute the judgment against Stamp Tech. In return, Stamp Tech assigned to plaintiff its right to seek contractual indemnification from Lydall.

¶ 4. In March 2005, plaintiff sued Lydall, seeking indemnification on Stamp Tech's behalf. Plaintiff also alleged that Lydall intentionally created the dangerous condition that caused his injury by, among other acts, removing a hard guard from the press intended to safeguard workers. According to plaintiff, Vermont's Workers' Compensation Act did not preclude him from suing Lydall, his employer, on the latter claim.

¶ 5. In May and July 2006, respectively, plaintiff and Lydall filed cross-motions for partial summary judgment on the indemnification claim. We describe the parties' cross-motions in turn.

¶ 6. Lydall advanced two principal arguments in support of its motion for partial summary judgment. First, Lydall acknowledged that it had entered into a contract with Stamp Tech for the installation of light curtains to safeguard its press; however, Lydall also argued that it did not receive Stamp Tech's "Terms and Conditions," which contained both the indemnification clause here at issue and a choice of law provision stating that the laws of Connecticut would apply to the contract.[1] According to Lydall, this latter factual issue was immaterial; notwithstanding the choice of law provision, Connecticut law could not apply to the indem-

---

[1] The relevant portions of Stamp Tech's "Terms and Conditions" state as follows: (1) "[b]uyer agrees to save and hold harmless Stamptech Inc. from any/all liability connected with the above equipment"; and (2) "[a]ll transactions will be deemed made and governed by the laws of the state of CT."

nification clause because, assuming plaintiff's characterization of Connecticut case law to be true, courts in Connecticut have interpreted similarly broadly worded clauses to allow an indemnitee to be indemnified for its own negligence. Lydall argued that such an interpretation of the indemnification clause would violate Vermont public policy, which requires such clauses to be specific and precise, and could not, therefore, be enforced by a Vermont court. As a second ground for granting its motion, Lydall asserted that Stamp Tech's settlement with plaintiff was collusive and unenforceable because, according to Lydall's theory of the case, Stamp Tech faced no liability and voluntarily accepted the entry of a $750,000 judgment against it — which sum plaintiff could only collect by pursuing an indemnification claim on behalf of Stamp Tech against Lydall.

¶ 7. Plaintiff, in opposition to Lydall's motion, attempted to refocus the superior court's inquiry on summary judgment. Specifying a variety of disputed factual issues that, in his view, precluded the superior court from deciding the entirety of the indemnification issue on summary judgment, plaintiff sought a limited determination that the indemnification clause conceivably could be enforced in either Vermont or Connecticut. In plaintiff's view, neither state's laws could support a conclusion that the indemnification provision was void as against public policy. Plaintiff addressed Lydall's allegation of collusion by noting that (1) the party whose actions caused his injuries remained a disputed issue of material fact; (2) Stamp Tech tried, in good faith, to involve Lydall in its settlement negotiations with plaintiff; and (3) Stamp Tech settled — notwithstanding its belief that it should not be held liable — only after consulting with third-party counsel regarding its potential liability exposure.

¶ 8. The superior court ruled on the parties' cross-motions approximately a year later, in June 2007, without a hearing or supplemental briefing. The superior court did not address the choice of law and validity issues raised by the parties. Instead, the court concluded that plaintiff abandoned his claim against Stamp Tech by filing an independent lawsuit against Lydall based largely on Lydall's alleged removal of the hard guard from the machine. At the same time, the court noted that Stamp Tech had settled the earlier case — conceding its own liability — while maintaining, for purposes of this case, that Lydall also bore responsibility for plaintiff's injuries. The superior court interpreted this series of

events, in conjunction with plaintiff's agreement to not seek to execute its judgment against Stamp Tech, as suggesting that Stamp Tech had colluded with plaintiff to settle the case when it had no actual liability. Therefore, the superior court held that plaintiff must show Stamp Tech's liability in full to avoid summary judgment. Because plaintiff failed to do so, it dismissed the indemnification claim.

¶ 9. Lydall then moved for summary judgment on the remaining issue of whether Vermont's Workers' Compensation Act rendered it immune from common law tort claims brought by its statutory employees, such as plaintiff. The superior court granted the motion, holding that plaintiff had not put forth any evidence suggesting that Lydall acted with the requisite mental state required to remove the case from the exclusivity provisions of Vermont's Workers' Compensation Act.

¶ 10. Plaintiff appeals, contending that the indemnification provision was part of the contract between Stamp Tech and Lydall and is valid and enforceable pursuant to both Vermont and Connecticut law. Plaintiff further argues that both of the superior court's decisions on summary judgment resolved disputed issues of material fact. Finally, plaintiff claims that the superior court erred in denying plaintiff's motion for reconsideration of the court's decision on indemnification in light of facts discovered in the time between the filing of the parties' motions and the issuance of the decision.

¶ 11. We review motions for summary judgment de novo, and we have consistently held that "summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Bacon v. Lascelles*, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996); see also V.R.C.P. 56(c)(3). In reviewing a ruling on a summary judgment motion, we consider "the entire setting of the case, including the affidavits, depositions, admissions, . . . and similar material on file to determine the existence of a genuine issue of material fact." *Pierce v. Riggs*, 149 Vt. 136, 138, 540 A.2d 655, 657 (1987). In conducting this review, we afford the nonmoving party "the benefit of all reasonable doubts and inferences." *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 476, 724 A.2d 454, 461 (1998) (citation omitted).

## I.

¶ 12. We turn first to the superior court's decision on indemnification. The superior court erred because the linchpin of its decision — that Stamp Tech faced no liability — was a disputed issue of fact. It was apparent on the face of the papers before the court that the question of fault remained a central issue for resolution in this case and a subject of continuing discovery, as we discuss below. As a result, the superior court's inference that the parties colluded in the settlement rests on a faulty premise.

¶ 13. To support its assertion that the settlement between plaintiff and Stamp Tech was collusive, Lydall directed the superior court to the depositions of Anthony Amato, the chief executive officer and owner of Stamp Tech, and Edward Lanoue, an employee of Stamp Tech. According to Lydall, Amato's deposition testimony indicated that Stamp Tech had a "complete defense" to plaintiff's negligence suit. Lydall contends that Stamp Tech might have asserted a "complete defense" had it argued at trial that, but for Lydall's removal of the hard guard, which Lydall had bolted onto the machine press, plaintiff's injuries would have been avoided. According to Lydall, armed with such a defense, Stamp Tech could not settle with plaintiff in good faith because it faced no liability. Lanoue testified at his deposition in accordance with Amato, stating that he did not believe that Stamp Tech should bear responsibility for plaintiff's accident. The superior court found Stamp Tech's positions inconsistent and drew an inference of collusion.

¶ 14. When we look at the entire setting of the case, however, affording plaintiff, the nonmoving party, "the benefit of all reasonable doubts and inferences," *Carr*, 168 Vt. at 476, 724 A.2d at 461 (citation omitted), it is apparent that the superior court's inference of collusion was unwarranted.

¶ 15. From the inception of plaintiff's suits against Stamp Tech and Lydall, the parties disputed who was at fault for plaintiff's injuries. On this point, Stamp Tech's position has been consistent. It did not believe that it *should* be held responsible for plaintiff's injuries, but recognized that, at trial, it *could* be held responsible. In other words, even if Stamp Tech agreed with Lydall that it had a complete defense when it settled, Stamp Tech still had to defend a lawsuit and obtain a jury verdict in its favor. The question is not whether it settled in the face of a viable

defense, but whether that settlement was pursued in good faith, and was within the indemnity agreement. Plaintiff's objection to Lydall's motion for partial summary judgment on the indemnification issue, together with certain of its accompanying attachments and other documents in the record, support this position. Plaintiff originally sued Stamp Tech in April 2004. Aware that plaintiff had sustained a substantial injury, and after consulting with counsel, Stamp Tech wrote to Lydall in June and September of 2004 to notify Lydall that it intended to seek a settlement in the suit and to request that Lydall honor its contractual obligation to defend and indemnify Stamp Tech. In October 2004, Stamp Tech accepted a stipulated judgment against it — only after Lydall had rebuffed its requests to participate in the suit.

¶ 16. Lydall, on the other hand, has asserted varying theories of fault to suit its needs, depending on whether it was defending against plaintiff's indemnity claim, or its own liability for purposes of Vermont's Workers' Compensation Act. For example, Counts II and III in plaintiff's complaint allege that, among other acts, Lydall's removal of the hard guard it had installed created the dangerous condition that made plaintiff's injuries substantially certain to have occurred. In its answer, Lydall steadfastly denied having ever installed a hard guard on the press, while faulting Stamp Tech's negligent installation of the light curtains for plaintiff's injuries. Later, in its motion for partial summary judgment on the indemnification issue, Lydall asked the court to assume that hard guards had been installed and that but for their removal after Stamp Tech had completed its installation of the light curtains, plaintiff could not have been injured. Lydall is, of course, entitled to plead different legal theories in the alternative, but it cannot urge the court to take as fact its assertion that Stamp Tech has no liability, or a complete defense to liability on the indemnification claim, and then abandon that factual position to support its defense on the workers' compensation claim.

¶ 17. If anything, the additional context provided by the record strongly suggests an inference contrary to that reached by the superior court — namely, that Stamp Tech pursued a good-faith settlement with plaintiff. That the facts in the record and the assertions made therein might be susceptible to inferences to the contrary, as urged by Lydall, only bolsters our conclusion that the superior court erroneously decided the indemnification issue on summary judgment. See, e.g., 10A C. Wright, A. Miller & M.

Kane, Federal Practice and Procedure § 2725, at 433-37 (3d ed. 1998) (collecting cases and noting that "if the evidence presented on the motion is subject to conflicting interpretations . . . summary judgment is improper").

¶ 18. The superior court's premature decision on indemnification, and its avoidance of the preliminary contractual interpretation issues, led to another error. As discussed above, the superior court inferred that plaintiff's settlement with Stamp Tech was collusive because plaintiff agreed not to execute judgment against Stamp Tech and plaintiff separately sued Lydall alleging that Lydall caused his injuries. Therefore, the superior court concluded that to avoid summary judgment plaintiff had to prove Stamp Tech's liability in full before he could enforce his settlement with Stamp Tech. The court adopted case law from Massachusetts that imposed a high burden of proof on a settling assignee of an indemnitee. See *Spellman v. Shawmut Woodworking & Supply, Inc.*, 840 N.E.2d 47, 52-53 (Mass. 2006); see also *Campione v. Wilson*, 661 N.E.2d 658, 663 (Mass. 1996). Neither plaintiff nor Lydall had briefed this issue. Nevertheless, based on this higher standard of proof and its inference of collusion, the superior court found that plaintiff could not establish Stamp Tech's liability.

■■ ¶ 19. The superior court erred in imposing Massachusetts law. The parties agreed that Stamp Tech installed the light curtains on Lydall's machine press pursuant to a contract. They disputed whether the terms of that contract contained an indemnification provision and a choice-of-law provision. They further disputed whether, assuming that the contract contained those provisions, they could be given effect in light of public policy concerns. The first task for the superior court was to interpret the contract. That is because plaintiff's evidentiary burden to show the bona fides of his settlement with Stamp Tech, along with other prerequisites to recover on the indemnity provision, would have followed from the court's interpretation of the parties' agreement. See, e.g., *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1094 (1st Cir. 1989) ("Where . . . the duty to indemnify arises out of contract . . . 'the question of whether actual liability is a prerequisite to the duty to indemnify is answered by reference to what the parties, by virtue of their contractual capacity, intended, as reflected in the language of the indemnity clause.' " (quoting *Bainville v. Hess Oil V.I. Corp.*, 837 F.2d 128, 131 (3d Cir. 1988))).

¶ 20. Moreover, the choice of law specified by the parties is Connecticut law. With respect to settling indemnitees, Connecticut appears to require a showing of potential — not actual — liability where the indemnitor has had notice of, and an opportunity to participate in, a third-party suit against the indemnitee. See *Black v. Goodwin, Loomis & Britton, Inc.*, 681 A.2d 293, 302 (Conn. 1996) (stating that where an insurer, acting in effect as an indemnitor, receives notice and an opportunity to defend a third-party action against an indemnitee, such indemnitee may make reasonable settlement with the third-party upon the indemnitor's refusal to assume its defense, and such settlement will be deemed reasonable if, among other things, the indemnitee demonstrates that it settled in face of potential liability). Because this issue has not been briefed, we leave it to the superior court to decide in the first instance.

¶ 21. We recognize that some of the preliminary contractual issues involved disputed issues of fact and therefore could not be resolved on summary judgment. But they were determinative of issues that the superior court ultimately decided on summary judgment, such as the burden of proof on a settling indemnitee. Thus, it was illogical to reach this issue without deciding, at a minimum, which state's law applied and if the indemnification provision was a valid part of the parties' agreement.

¶ 22. Finally, although the contract specifies Connecticut as the state law governing the agreement, Lydall claims that we should not enforce the provision because Connecticut law differs from Vermont law on the question of whether the indemnification provision must expressly state that the clause covers the indemnitee's negligence. Although not cited by either party, our most recent decision in this area is *Tateosian v. State*, 2007 VT 136, 183 Vt. 57, 945 A.2d 833. In *Tateosian*, we held that, under the factual circumstances of that case, an indemnification clause covers the sole negligence of the indemnitee only where it clearly expresses that intent. *Id.* ¶ 23. But see *Hamelin v. Simpson Paper (Vermont) Co.*, 167 Vt. 17, 21, 702 A.2d 86, 89 (1997) (commercial parties may allocate the risk of liability among themselves regardless of negligence or fault). The issue in Vermont is not whether commercial parties may allocate liability among themselves, including indemnification of one party for its own negligence, but under what circumstances the agreement has to expressly disclose that fact. Under these circumstances, we cannot conclude that

differences between Connecticut and Vermont law as to how to interpret an indemnification provision in a contract between commercial parties is so "cruel or shocking to the average man's conception of justice" that we would refuse to enforce a choice of law provision on public policy grounds. See *Payne v. Rozendall*, 147 Vt. 488, 492-93, 520 A.2d 586, 588-89 (1986).

¶ 23. In the absence of a statute in the forum state providing otherwise, it is well-settled that it would be contrary to the justified expectations of the parties for a court to interpret their agreement by the laws of any jurisdiction other than that specified in the contract. See, e.g., Restatement (Second) of Conflict of Laws § 187 cmt. c (1971) (parties may determine the terms of their contractual engagements and spell them out in the contract; in such cases, the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties.). On remand, the superior court should apply Connecticut law if it decides that Stamp Tech's "Terms and Conditions" are a part of the contract.

II.

¶ 24. In view of our disposition above, it is not necessary to reach plaintiff's claim that the court erroneously denied his motion for reconsideration.[2] We note only that the factual dispute on liability became even clearer due to the discovery that occurred

---

[2] Plaintiff promptly alerted the superior court to new expert testimony via a motion pursuant to Vermont Rule of Civil Procedure 59(e), and this additional testimony should have been the basis for reconsideration — notwithstanding the superior court's discretion in considering such motions. The superior court issued its decision on June 9, 2007, just after plaintiff deposed Lydall's expert, Peter Barroso, who opined that Stamp Tech was negligent, even if the hard guard had remained in place. We recognize that the superior court had no obligation to notify the parties that its decision was to issue. Nevertheless, we note that the transcript of Barroso's deposition was apparently not available until June 15, 2007, several days after the superior court's entry of summary judgment in favor of Lydall. This suggests that plaintiff did not intentionally delay in bringing this testimony to the attention of the superior court. Instead, once the transcript was available, plaintiff promptly filed a motion for reconsideration pursuant to Rule 59(e). Given that nearly a year had elapsed since the parties filed their cross-motions for partial summary judgment on the indemnification issue, plaintiff had little reason to suspect that a ruling by the superior court on those motions was imminent. Finally, nothing in the record suggests that plaintiff attempted to "game the system" by waiting to introduce Barroso's deposition until after summary judgment had been entered against it.

between the time the parties filed their motions for partial summary judgment and the superior court issued its decision, almost a year later. Indeed, on appeal, Lydall argued in this Court that Stamp Tech is liable for plaintiff's injuries. We emphasize that Lydall cannot maintain that the settlement was collusive because Stamp Tech had no liability, or had a complete defense, when it is also taking a position that Stamp Tech is liable.

## III.

¶ 25. Following the superior court's ruling on the cross-motions for partial summary judgment on the indemnity issue, Lydall moved for summary judgment on the remaining issue of whether the exclusivity provisions of Vermont's Workers' Compensation Act rendered it immune from common law tort claims brought by its statutory employees, such as plaintiff.[3] Characterizing plaintiff's injuries as an "industrial accident," Lydall denied that it specifically intended to injure him, citing as evidence, among other things, deposition testimony of an employee relating to whether or not the bar or hard guard ever existed, and if so, whether it was ever removed from the press after Stamp Tech left Lydall's premises. Lydall further disclaimed any notion that it acted intentionally by noting plaintiff's own deposition testimony, wherein he stated that he did not believe that Lydall intended to injure him, and by highlighting plaintiff's own negligence in connection with his injury.

¶ 26. In addition to specifically alleging in his complaint that his injuries were not merely an accident, plaintiff also asserted that Lydall intentionally created the dangerous condition that made his injuries substantially certain and willfully disregarded its knowledge of such condition. Plaintiff's opposition to Lydall's motion for summary judgment further alleged, and supported with affidavits,

---

[3] Absent an exception to the general rule, the Vermont Workers' Compensation Act prohibits an employee from suing his employer in tort for a workplace accident. See 21 V.S.A. § 622; *Kittell v. Vermont Weatherboard, Inc.*, 138 Vt. 439, 440, 417 A.2d 926, 926 (1980) (per curiam). The general rule, which provides an exclusive remedy for injured employees, reflects a deliberate legislative balancing of interests; the employee receives compensation for his workplace injuries without regard to fault, and the employer receives, in return, limited liability. See *Kittell*, 138 Vt. at 441, 417 A.2d at 927. However, under the "specific intent" exception, where an employer, acting with specific intent, injures an employee in connection with his employment, the employer no longer enjoys statutory immunity from common law tort suits. See *id.*

facts tending to show that Lydall "removed the hard guard . . . and then put a poorly trained temp worker on the machine, added additional operators, and located the operator who had the activation controls out of sight of the workers on the back of the machine." Thus, according to plaintiff, his injuries were "inevitable."[4]

¶ 27. Furthermore, plaintiff's opposition to Lydall's motion for summary judgment called on the superior court to evaluate these allegations in light of the "substantial certainty" exception adopted by several states with respect to an employer's immunity from common law suits pursuant to workers' compensation statutes. We considered, but did not adopt, this exception in *Mead v. Western Slate, Inc.*, 2004 VT 11, ¶ 17, 176 Vt. 274, 848 A.2d 257. Generally speaking, the substantial certainty exception allows employees to sue their employers in tort at common law if the employer "engages in conduct with knowledge that it is substantially certain to cause injury or death." *Id.* ¶ 13.

¶ 28. On November 28, 2008, the superior court ruled in favor of Lydall. It concluded that plaintiff had not put forth sufficient evidence to establish an exception to the exclusive remedy provision of Vermont's Workers' Compensation Act under either the specific intent standard or the substantial certainty standard.

¶ 29. Without expressing an opinion as to whether we would entertain plaintiff's invitation to adopt some form of a substantial certainty exception to the Vermont Workers' Compensation Act's exclusive remedy provision, we hold that the superior court erred in granting summary judgment in favor of Lydall.

¶ 30. Key to the superior court's holding was its conclusion that, despite plaintiff's efforts to "outline[] in painstaking detail specific acts taken by Lydall to modify the press machine by removing certain safety features," plaintiff had offered no "facts establishing that [Lydall] took these actions with the specific intent of harming its employees." The superior court further stated that "[t]he most that can be adduced from the undisputed facts, and the evidence in the record, is that . . . Lydall knowingly permitt[ed] a hazardous work condition to exist."

---

[4] Plaintiff's choice of words in describing defendant's state of mind may be somewhat imprecise. Taking into account the entire setting of the case, however, including the pleadings, see V.R.C.P. 56(c), we cannot, as does the dissent, see *post*, ¶ 37, construe this filing as, in effect, a concession that there was no evidence that defendant intended to injure him.

¶ 31. These statements suggest that the court did not afford plaintiff, the nonmoving party, the "benefit of all reasonable doubts and inferences," as is required in addressing motions for summary judgment. See *Carr*, 168 Vt. at 476, 724 A.2d at 461. Intent must often be inferred from a party's acts, and where intent is a dispositive issue, courts should exercise caution in granting summary judgment. See *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 395 (E.D.N.Y. 2005) ("Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, but is certainly not unobtainable." (citation omitted)); see also 10B Wright, *supra*, § 2730, at 6-7 (collecting cases). Such caution is especially appropriate here because not only are the facts alleged by plaintiff susceptible to competing inferences, but defendant also concedes that material facts — whether the hard guard existed and, if it did, whether it was removed from the press — remain in dispute.[5] Thus, in view of our remand and the continuing dispute over how the accident occurred, we conclude that it was premature for the superior court to grant summary judgment in favor of Lydall on the issue of intent or substantial certainty. See *Envtl. Bd. v. Chickering*, 155 Vt. 308, 319, 583 A.2d 607, 613-14 (1990) ("Summary judgment is not a substitute for a determination on the merits, so long as evidence has been presented which creates an issue of material fact, no matter what view the court may take of the relative weight of that evidence.").

*Reversed and remanded for further proceedings not inconsistent with this opinion.*

¶ 32. **Burgess, J.**, concurring in part and dissenting in part. With a footnote, the majority overturns what was fairly clear since enactment of workers' compensation almost a century ago, and what *Kittell v. Vermont Weatherboard, Inc.*, 138 Vt. 439, 441, 417 A.2d 926, 927 (1980) (per curiam), made explicitly clear: "[n]othing short of a specific intent to injure falls outside of the scope of the

---

[5] We disagree with the inference the dissent draws from "the undisputed fact that defendant installed light guards on the machine." *Post*, ¶ 37. When viewed in isolation, the fact may perhaps be construed as "bel[ying] any claim that defendant intended to injure its employees." *Post*, ¶ 37. Viewed in the appropriate context and in the light most favorable to plaintiff, however, this suggests that defendant appreciated the dangerousness of the press, but nevertheless rendered the light guards ineffective by removing the hard guard. We cannot say that a reasonable fact-finder could not infer intent to injure based on these circumstances.

Act." Instead, the majority now holds that prima facie intent to injure is made out, not by evidence of specific intent to injure, but by evidence that an employer knows that a machine is inevitably dangerous. *Ante*, ¶ 31 n.5 ("We cannot say that a reasonable fact-finder could not infer intent to injure based on these circumstances [where the employer appreciated the dangerousness of the press, but nevertheless rendered the light guards ineffective by removing the hard guard]."). Thus, the majority adopts a liberal version of a "substantial certainty of injury" exception to the exclusive remedy of workers' compensation, but fails to explain how this employer's injurious maintenance practices differ from "wanton, wilful, deliberate, intentional, reckless . . . or malicious negligence" not exempted from the Act's coverage. *Kittell*, 138 Vt. at 441, 417 A.2d at 927. This is a major amendment to a statute that is not ours to rewrite.

¶ 33. Moreover, the majority's characterization of defendant's "appreciation" of the danger is wrong. Although plaintiff's experts opined that *they* understood the danger, they did not state that *defendant* shared the same knowledge. Clearly defendant did not actually intend an injury, or it would have either removed all the guards, or not bothered to install the additional guards. Certainly, injurious machinery is to be discouraged, but the catalog of arguably avoidable workplace injuries is virtually limitless. Yet, by substituting evidence of apparent inevitability of dangerousness in place of the specific intent to injure required under *Kittell*, the majority's analysis renders many, if not most or all, machine-induced workplace injuries subject to tort action, rather than workers' compensation.

¶ 34. While I agree with the majority opinion in all other aspects of this decision, it is incorrect to hold that plaintiff is not barred by the Workers' Compensation Act from suing defendant in tort. Plaintiff carried the burden of proof on this issue, but failed to proffer any evidence to show that defendant specifically intended to injure him — the only exception to the Act's exclusive remedy provision — as was required to survive defendant's motion for summary judgment.[6] Moreover, the majority's holding that employer liability beyond its obligations under the Workers'

---

[6] The majority states that summary judgment was premature in this case because there were material facts in dispute regarding the issue of intent, but defendant was not required to show an absence of factual dispute to succeed on his motion for judgment. Instead, as the party not bearing the burden of proof at trial,

Compensation Act can be premised on a claimed "substantial certainty" of workplace injury is a significant departure from established law. Because this injects a potentially vast uncertainty into what was a settled legislative scheme of employer strict liability to pay defined, but guaranteed, benefits to injured employees, and effectively changes the Act, I respectfully dissent.

¶ 35. Since enactment of the workers' compensation system in 1917, employer liability for workplace injury is not supposed to be a moving target. As noted above, it has been long settled that "[n]othing short of a specific intent to injure falls outside of the scope of the Act." *Kittell*, 138 Vt. at 441, 417 A.2d at 927. That the Legislature intended to strictly curtail tort liability in favor of a starkly exclusive remedy of a statutory schedule of compensation was emphatically confirmed in *Kittell*, where we summarized that "[t]he overwhelming weight of authority in other jurisdictions is that the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." *Id.* (quotation omitted).

¶ 36. Here, defendant moved for summary judgment on the issue of whether it was immune from a tort suit by plaintiff under the exclusivity provision of the Workers' Compensation Act. Defendant argued in its motion that plaintiff failed to put forth any evidence of injurious intent. In response, plaintiff submitted affidavits of safety experts who testified that defendant's actions made an accident unavoidable, but produced no additional evidence to prove defendant acted with any specific intent to cause injury. Viewed in the light most favorable to plaintiff, his evidence showed: defendant's safety officer was not involved in every equipment safety decision and never checked the Komatsu Press prior to plaintiff's injury; Stamp Tech arranged the light curtains

---

defendant may obtain summary judgment where plaintiff cannot "make a showing sufficient to establish the existence of an element essential to his case." *Poplaski v. Lamphere*, 152 Vt. 251, 254, 565 A.2d 1326, 1329 (1989) (internal quotation omitted). Here, defendant showed that, under then existing law and accepting all of plaintiff's allegations as true, plaintiff had not and could not establish facts to prove a specific intent to injure. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, the moving party need not establish that there are any undisputed material facts because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

for a single operator, but defendant used multiple operators on the press; defendant knew the Occupational Safety and Hazard Administration required a new safety check when operation of the press changed from a single operator to multiple operators, but it did not conduct a new safety check; OSHA requires a set of palm controls for every press operator while this press had but a single set of palm controls and was operated with multiple employees; Stamp Tech's installation of the light curtains, with the hard guard in place, made the press safe for all operators, but defendant removed the hard guard. Finally, plaintiff's experts opined that the use and set-up of the machine made serious injury "substantially certain" or "inevitable."

¶ 37. While removal of the hard guard may have been inherently dangerous, none of this evidence suggests that defendant actually intended to injure plaintiff or knew that such injury was inevitable. In fact, plaintiff appeared to concede there was no proof of any specific intent to injure, claiming instead that the injury was "inevitable," or was a "substantial certainty." Whether "somewhat imprecise," as characterized by the majority, *ante*, ¶ 26 n.4, or not, plaintiff never asserted that defendant intended to injure him. The complaint did not allege injurious intent and, responding to defendant's motion for summary judgment in the absence of proof of intent, plaintiff argued that this Court no longer adhered to the specific-intent standard. Plaintiff did allege that defendant's actions in removing the hard guard and ordering multiple employees to operate the machine were intentional actions, but intentional actions resulting in injury are not synonymous with a specific intent to injure. Cf. *Mead v. Western Slate, Inc.*, 2004 VT 11, ¶ 17, 176 Vt. 274, 848 A.2d 257 (the intentional action of ordering an employee to work in a known dangerous area where a rock slide recently occurred could not support a reasonable inference that the employer knew to a substantial certainty that an accident would occur, let alone that the employer specifically intended to injure the employee). Indeed, the undisputed fact that defendant installed light guards on the machine, the only apparent purpose of which was to prevent employee injury, belies any claim that defendant intended to injure its employees with this particular machine, especially absent any evidence to the contrary.

¶ 38. Ruling on the motion for summary judgment according to the law in effect at the time under *Kittell*, the superior court accurately summarized that the "most that can be adduced from

the undisputed facts, and the evidence in the record, is that [defendant] knowingly permit[ed] a hazardous work condition to exist, which conclusion still falls short of the kind of actual intent to injure necessary to support [plaintiff]'s claim against [defendant]." The majority's observation that intent is often inferred from actions and circumstances, rather than from direct evidence of the actor's state of mind, is no substitute for the lack of any action or circumstance in this case to support the notion that defendant intended injury.

¶ 39. Injury from an improperly shielded machine is always, in some sense, inevitably certain at some point in time. Hence the need for guards. Maintaining a machine in such condition as to make an injury "inevitable," as plaintiff's witnesses testified, at some undetermined time in the future and absent any particularized knowledge of the danger on the part of the employer, cannot equate to a specific intent to injure. Absent such intent by the defendant, plaintiff's "sudden but foreseeable injury constitutes 'personal injury by accident' within section 618" and is covered by the Act. *Kittell*, 138 Vt. at 440, 417 A.2d at 926. Plaintiff failed in both his initial proffer and in his response to defendant's motion to present evidence that could carry his burden on this claim, and summary judgment for defendant was properly entered.

¶ 40. Recognizing his lack of evidence of specific intent, plaintiff alternatively posits the "substantial certainty" of injury as another avenue by which to overcome the statutory exclusivity of workers' compensation as a remedy. This exception — recognized by some states — had not before been adopted in Vermont. We entertained the theory in *Mead*, but only in the context of holding that if "substantial certainty" was the legal standard — as urged by that plaintiff — his evidence was still insufficient to support the claim. *Mead*, 2004 VT 11, ¶ 20. *Mead* reviewed the various departures from specific intent in other jurisdictions, noting that "[t]he standard is not uniform," and described different tests ranging from "a substitute for a subjective desire to injure" to "virtual certainty" to a willful disregard of "actual knowledge" of certain injury. *Id.* ¶¶ 13-14. However this lesser standard is defined, "substantial certainty" remains less than the specific intent to injure necessary to fall outside of workers' compensation for accidental injury, and so was expressly precluded by *Kittell* as a matter of law. The variety of standards and competing public policy choices behind the new "substantial certainty" exemption, as

outlined in *Mead*, only underscore that amending the Workers' Compensation Act as promoted by plaintiff is clearly not an interpretive exercise for this Court, but a legislative decision for the General Assembly.

¶ 41. Finally, even under the *Mead* analysis, the superior court was correct that plaintiff proffered no facts to show that defendant knew an injury was substantially certain to result from modification to the machine. The *Mead* Court declined to consider departing from the rule of *Kittell* absent evidence " 'fairly and reasonably' support[ing] a rational inference that defendants knew to a *substantial certainty* their actions would result in injury to plaintiff." *Id.* ¶ 17 (citing *Gero v. J.W.J Realty*, 171 Vt. 57, 59, 757 A.2d 475, 476 (2000)). That plaintiff's experts perceived the injury to be substantially certain or inevitable is not evidence that his employer shared the same perception or knowledge. Assuming, as in *Mead*, that "there is little doubt that defendant[] [was] negligent in exposing plaintiff to the known risk[,] . . . there is no evidence from which a jury could reasonably infer that defendant[] *knew* the injury to plaintiff was *substantially certain* to occur." *Id.* ¶ 19. Having departed from the rule of *Kittell*, the majority can cite no evidence to support its conclusion to the contrary.

¶ 42. The superior court was doubly right. Until today, there was no "substantial certainty of injury" exception to the exclusivity of workers' compensation, and plaintiff's evidence could not support such a claim even when allowed now. See *Mead*, 2004 VT 11, ¶ 19, *ante*, ¶ 27. The superior court's summary judgment on both points should be affirmed, and changes to the legislation should be left to the Legislature.

¶ 43. I am authorized to state that Justice Skoglund joins in this dissent.