Green Mountain Nursing Home v. Carlisle, No. S1568-10 CnC (Crawford, J., July 9, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Chittenden Unit | Docket No.: S1568-10 CnC |

GREEN MOUNTAIN NURSING HOME
    Plaintiff

v.

JASON CARLISLE and
AMIE LEA CARLISLE
    Defendants

DECISION ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This is a nursing facility collection case in which the facility has brought claims against third parties. In its amended complaint (filed Dec. 22, 2011), plaintiff Green Mountain Nursing Home (GMNH) alleges that defendants Jason Carlisle and Amie Lea Carlisle contracted with GMNH for nursing services rendered to Jason's father, John Carlisle, but failed to pay GMNH under the contract.[1] GMNH asserts that the amount due and outstanding is $15,817.25. In addition to that breach-of-contract count (Count I), GMNH also alleges that Jason and Amie were John's agents under a Power of Attorney, but failed to use John's assets and resources to pay for his obligations and instead compensated themselves or accepted a gift of nearly $9,500 (Count II—Breach of Fiduciary Duty). Finally, GMNH asserts that a check paid from John to Jason in the amount of $9,417.32 was a fraudulent conveyance (Count III). GMNH moves for partial summary judgment on Counts I and III. Defendants oppose GMNH's motion, and cross-move for partial summary judgment on Count I.

BACKGROUND

The following facts are undisputed except where noted, and are derived from GMNH's statement of undisputed material facts (filed Mar. 7, 2012) and defendants' statements of undisputed and disputed material facts (filed Apr. 16, 2012). John Carlisle, now deceased, was Jason Carlisle's father and Amie Lea Carlisle's father-in-law. At all relevant times, Jason and Amie were John's agents under a Power of Attorney document. On or about July 17, 2010, while in the process of moving from a Massachusetts nursing home to GMNH's nursing facility, John paid a check to Jason in the amount of $9,417.32. According to both Jason and Amie, John expressly stated to them both that he wanted them to have the money as a gift.

On July 21, 2010, Jason and Amie opened a checking account with TD Bank. The account bears John's name as the account-holder, but also lists Jason as "POA" and

---

[1] For clarity, the court refers to John, Jason, and Amie Carlisle by their first names. No disrespect is intended.

Amie as "POA in fact." The account was initially funded with $5,042.24 from Sovereign Bank. Social Security checks made out to John—each in the amount of $1,330—were deposited into the TD Bank account in August, September, October, November, and December 2010. A check for $770.35 from Lincoln Street Realty Associates was also deposited into the account in August 2010.

John was admitted to GMNH's nursing facility on July 27, 2010. On or about July 28, 2010, Amie signed a "Resident Admission Agreement" (the Agreement). At that time, John was receiving medical treatment. According to Amie, a GMNH employee informed her that if she did not sign the Agreement, John would not be admitted. She also alleges that GMNH never provided her with an opportunity to read the Agreement prior to signing it, and that she did not receive a copy of the Agreement.

There is no dispute as to the language of the Agreement. It states, among other things, the following:

> This is an Agreement between Green Mountain Nursing Home (the "Facility"), John Carlisle (the "Resident"), and John Carlisle (the "Responsible Party"). In consideration of the mutual promises set forth in this agreement, the Facility, the Resident (if capable of managing his or her affairs), and the Responsible Party hereby agree as follows. . . .

> The Resident and Responsible Party agree to act promptly and expeditiously to establish and maintain eligibility for Medicaid assistance . . . .

> The filing of an application for Medicaid assistance does not excuse the Resident or Responsible Party form [sic] continuing to make payment to the Facility . . . .

> The Resident and Responsible Party agree that, during the pendency of any application for Medicaid assistance, the Resident's monthly income . . . will be paid to the Facility on or before the tenth day of each month. . . .

> If the Responsible Party has control of or access to the Resident's income and/or assets, the Responsible Party agrees that these funds shall be used for making prompt payment to the Facility, to the extent of said funds, for care and services rendered to the Resident, in accordance with the terms of this Agreement. . . .

> If this account is sent to an attorney for collection, the Resident and Responsible Party agree to pay all costs and reasonable attorney's fees associated with any collection action. . . .

2

THE UNDERSIGNED CERTIFY THAT THEY HAVE READ AND AGREE TO THE FOREGOING, TO THE WHOLE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND THAT THEY HAVE RECEIVED A COPY OF THIS AGREEMENT.

Agreement, pp.1, 5, 6, 8. The Agreement has signature lines for the "Resident (If Resident is managing his or her affairs)"; for a "Responsible Party"; and for a "Party Acting For Resident (Guardian or Power of Attorney, if Resident is not managing his or her own affairs)." Amie signed on the "Party Acting For Resident" line, next to which there is a handwritten notation indicating "POA John Carlisle." Nobody signed as the "Resident" or as the "Responsible Party."

In a check dated August 10, 2010 and signed by Amie, John paid GMNH $687.50 from the TD Bank account. There were other withdrawals from the account, including $400 on November 29, 2010, $425.74 on December 31, 2010, and other checks that Jason and Amie made out to pay for John's "debts, expenses, and living costs." Defs.' SUMF ¶ 9 (filed Apr. 16, 2012). However, the August 10, 2010 check was the only payment made to GMNH.

Jason and Amie completed a Medicaid application for John (the Application) on September 1, 2010. According to them, the Application was filled out in part by GMNH's employees, and was completed and signed under the direction of GMNH employees. Question 6 of the Application asked whether John had unpaid medical or dental bills. In response, the "yes" box is checked, and the estimate of amount owed is $5,000 to $7,500. In response to questions about John's resources, the only item listed was the TD Bank account with a value of $2,000. Question 12 asked whether John had "given away, sold, or traded anything of value since February 8, 2006." In response, the "no" box is checked. Jason signed the Application as the "applicant or authorized representative," and indicated "POA" after his signature. The Application was denied.

GMNH sent bills to Jason (as John's power-of-attorney) in August, September, and October 2010. John was discharged from GMNH's facility in October 2010. GMNH sent another bill to Jason in November 2010. The only payment GMNH received for the services rendered to John was the $687.50 mentioned above. According to GMNH, the outstanding unpaid amount on John's account is $15,817.25.

ANALYSIS

Neither party has moved for summary judgment on Count II (Breach of Fiduciary Duty), so the court does not discuss that count here, except to question whether GMNH is in a position to assert a breach-of-fiduciary-duty claim when any duties defendants owed as John's agents flowed to John and not to GMNH. See *Inova Health Sys. Servs., Inc. v. Bainbridge*, No. CL 2009-3204, 2010 WL 7765105, at *3 (Va. Cir. Ct. July 19, 2010) (facility lacked standing to asset a self-dealing claim against resident's POA because the agent owed a fiduciary duty to the resident, not the facility). The court first turns to Count I (Breach of Contract) and the parties' competing summary-judgment motions on

3

that count. Then the court analyzes GMNH's motion for partial summary judgment on Count III (Fraudulent Conveyance).

## 1. Count I—Breach of Contract

GMNH seeks summary judgment on its breach-of-contract claim. The basis of the claim is the Agreement Amie signed in late July 2010. Pl.'s Mot. for Partial Summ. J. at 5 (filed Mar. 7, 2012). According to GMNH, the Agreement made both John and Amie, as John's power-of-attorney and legal representative, responsible for paying GMNH privately unless and until Medicaid benefits were granted or approved. *Id*. GMNH attempts to defuse any argument Amie may have concerning pressure to sign the Agreement or failure to read it by noting the all-caps language at the end of the Agreement, and by arguing that GMNH should not be penalized for Amie's failure to exercise her rights. *Id*. at 6–8.

Defendants oppose GMNH's motion, and move for summary judgment on Count I. They maintain that Amie signed the Agreement only as the Resident's power of attorney, and not as the "Responsible Party." Defs.' Opp'n and Cross-Mot. at 1 (filed Apr. 16, 2012). Defendants assert that an agent acting under a power of attorney is not personally liable for the debts of the principal, and that neither Jason nor Amie is liable under the Agreement. *Id*. GMNH has not filed a reply in support of its motion or an opposition to defendants' cross-motion.

The court's goal in interpreting the Agreement is to "give effect to the intent of the parties as it is expressed in their writing." *Southwick v. City of Rutland*, 2011 VT 53, ¶ 4, available at http://info.libraries.vermont.gov/supct/current/op2010-372.html (citing *Hamelin v. Simpson Paper (Vt.) Co.*, 167 Vt. 17, 19 (1997)). When the contract language is unambiguous, the court takes the words to represent the parties' intent, and the plain meaning of that language governs the contract's interpretation. *Id*.

Here, the plain language of the Agreement makes clear that neither Jason nor Amie were the "Resident," nor were either of them the "Responsible Party." The preamble indicates that only John was the "Resident," and only John was the "Responsible Party." See *Inova Health Sys. Servs., Inc. v. Bainbridge*, No. CL 2009-3204, 2010 WL 7765105, at *3 (Va. Cir. Ct. July 19, 2010) (admissions agreement that identified only two parties to the agreement—the facility and the resident/responsible party—did not bind the agent who signed it as the resident's POA). The signature line further reinforces the fact that neither Jason nor Amie signed the Agreement in their personal capacities, and Amie only signed in her capacity as John's agent. This is therefore an even stronger case against holding the agent liable than *Inova*, in which the agent signed on the "Responsible Party" line but was still not personally liable because the agreement elsewhere listed the resident as the "Responsible Party," and any ambiguity would be construed against Inova. *Id*.; see also *Gladeview Health Care Ctr. v. Grande*, No. 566195, 2003 WL 22040626, at *2 (Conn. Super. Ct. Aug. 7, 2003) (where the resident's POA did not sign as the "responsible party," she was not liable as such).

As an agent acting for a disclosed principal, Amie was not a party to the contract between GMNH and John. See *Hall v. Miller*, 143 Vt. 135, 139 (1983) (where a known agent acting within the scope of his authority for a disclosed principal signs a contract, the agent is not liable on the contract); Restatement (Third) of Agency § 6.01. Neither do any of the circumstances suggest that she entered into a separate contract with GMNH under which she agreed to use her access to John's income or resources to pay for John's care.[2] Even if she had, GMNH could only require her to provide the payment using her access to John's available income or resources, but without incurring any personal financial liability. *Amsterdam Nursing Home Corp. v. Lang*, No. 601821/05, 2007 WL 2671142, at *4 (N.Y. Sup. Ct. Sept. 13, 2007).

The court concludes that GMNH cannot, on the basis of the contractual provisions of the Agreement, recover from either defendant personally the amount allegedly still owing on John's account. The court will accordingly deny GMNH's motion for partial summary judgment on Count I and will grant defendants' motion for partial summary judgment on that count.

## 2. Count III—Fraudulent Conveyance

GMNH asserts that it is entitled to summary judgment on its fraudulent conveyance count under both 9 V.S.A. § 2288(a)(1) and § 2288(a)(2) based on the transfer of John's funds to defendants ten days before they applied for Medicaid on his behalf and admitted him to GMNH's facility. Pl.'s Mot. for Partial Summ. J. at 9. GMNH maintains that it is appropriate to decide this fraud claim on summary judgment because there are a sufficient number of "badges of fraud" present to create an inference or presumption of fraud. See *id*. at 9–12 (asserting that this case involves a transfer to an insider for no reasonably equivalent consideration, that the transfer amounted to substantially all of John's assets in a situation of insolvency, and that the transfer occurred shortly before a substantial debt was incurred (citing 9 V.S.A. § 2288(b)).

Defendants maintain that, while "badges of fraud" may exist, the court should consider other circumstances. Defs.' Opp'n and Cross-Mot. at 7. Specifically, defendants say that they have raised a dispute as to whether John, Jason, or Amie had any intent to defraud GMNH. *Id*. Defendants point to their affidavits in which they state that they did not intend to defraud or deceive in accepting John's gift. *Id*. They assert that the fact that they paid GMNH $687.50 in August 2010 is an example of their good faith. *Id*.

Under 9 V.S.A. § 2288, a transfer may be set aside either "if tainted with actual fraud" under subsection (a)(1), or if it is "constructively fraudulent" under subsection (a)(2). *Bacon v. Reimer & Braunstein, LLP*, 2007 VT 57, ¶ 8 n.2, 182 Vt. 553 (mem.); *In*

---

[2] Notwithstanding a federal prohibition on third-party guarantees of payments as conditions of admission, 42 U.S.C. §§ 1395i-3(c)(5)(A)(ii), 1396r(c)(5)(A)(ii), such contracts are permissible. See 42 U.S.C. §§ 1395i-3(c)(5)(B)(ii), 1396r(c)(5)(B)(ii) (nursing facilities not prevented "from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care").

*re Montagne*, 417 B.R. 232, 238 (Bankr. D. Vt. 2009) (noting that § 2288 provides two bases for finding that a transfer is fraudulent: "actual intent" to defraud and "constructively fraudulent transfer"). While "[t]he presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." *In re Coffey's Case*, 949 A.2d 102, 120 (N.H. 2008) (quoting *Max Sugarman Funeral Home, Inc.*, 926 F.2d 1248, 1254–55 (1st Cir. 1991)); see also *Montagne*, 417 B.R. at 238 ("When these badges of fraud are present in sufficient number, it may give rise to an inference or presumption of fraud." (quoting *Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 292 (D. Conn. 2009)).

The court concludes that, in these circumstances, it cannot rule on the fraudulent conveyance claim on summary judgment. This is not a case where the "fact-intensive" determination of any fraudulent intent can be made on the papers. *Montagne*, 417 B.R. at 238; see also *Stamp Tech, Inc. v. Lydall/Thermal Acoustical, Inc.*, 2009 VT 91, ¶ 31, 186 Vt. 369 (noting that courts should exercise caution in granting summary judgment where intent is a dispositive issue). Notwithstanding any inference or presumption that might be drawn from the apparently undisputed presence of several badges of fraud in this case, defendants should have the opportunity to put on evidence to support their contention that the transfer in this case was merely a gift. Similarly, as to constructive fraud, the court concludes that there is insufficient evidence to rule on whether John believed or reasonably should have believed that he would incur debts beyond his ability to pay.

ORDER

Plaintiff's motion for partial summary judgment on Counts I and III is denied.

Defendants' motion for partial summary judgment on Count I is granted.

The counts remaining for trial are Count II (breach of fiduciary duty) and Count III (fraudulent conveyance).

Dated at Burlington this _____ day of July 2012.

_____
Geoffrey W. Crawford
Superior Court Judge