2004 VT 11

**Martin Mead, Jr. and April Mead v. Western Slate, Inc. and Jeffrey N. Harrison**

[848 A.2d 257]

No. 02-544

Present: **Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed February 13, 2004

*Thomas W. Costello* and *Steven B. Wright* of *Thomas W. Costello, P.C.*, Brattleboro, for Plaintiff-Appellee.

*John Paul Faignant* of *Miller Faignant & Behrens, P.C.*, Rutland, for Defendant-Appellant Western Slate, Inc.

*John E. Brady* and *Brendan P. Donahue* of *Brady & Callahan, P.C.*, Springfield, for Defendant-Appellant Harrison.

¶ 1. **Johnson, J.** Defendants Western Slate, Inc. and Jeffrey N. Harrison appeal from the denial of their post-trial motions for judgment as a matter of law, or in the alternative, for a new trial, following a jury verdict finding them liable for injuries to their employee, plaintiff Martin Mead, Jr., under the intentional-injury exception to the workers' compensation law. Defendants contend the court erred in ruling that the exception could be satisfied by a showing that they knew to a "substantial certainty" their conduct would result in plaintiff's injury. We conclude that the evidence was insufficient as a matter of law to support such a showing, and therefore reverse.

¶ 2. Viewing the evidence in the light most favorable to the judgment, as we must on appeal from a denial of a motion for judgment as a matter of law, *Brueckner v. Norwich Univ.*, 169 Vt. 118, 120-21, 730 A.2d 1086, 1089 (1999), the facts may be summarized as follows. Plaintiff Martin Mead had worked for defendant Western Slate, Inc. as a mechanic, sawyer, and driller for several years prior to the accident that gave rise to this litigation. He had extensive experience working in Western's slate

quarry pit, and also had prior work experience in the quarry of another employer. Defendant Jeffrey N. Harrison is the co-owner of Western. He is an experienced slate quarry operator and was generally in charge of mining operations at the time of incident. On the morning of August 17, 1999, Harrison directed plaintiff to prepare a "pillar" — or area of stone — below the northeastern high wall for excavation. Plaintiff spent much of the day in the pit drilling holes along the butt and grain of the rock for the insertion of packing material and explosives.

¶ 3. The next morning, plaintiff returned to the area to complete the drilling. Upon arrival, however, he observed fresh debris in the area — indicating a recent rock fall. Plaintiff sent two co-workers, his brother Richard Mead and Leonard Andrews, to inform Harrison about the situation, and then commenced to complete the drilling. Plaintiff recalled that when the two returned, Richard reported that Harrison had instructed them to load the explosives and packing material in their truck, return to the pit, and finish the drilling, loading, and firing. Harrison had also indicated that he needed to go to the store to buy parts, and would return shortly to inspect the area.

¶ 4. Mead and Andrews loaded the packing material and explosives in their truck as directed, returned to the pit, and reported their conversation with Harrison to plaintiff. Plaintiff then completed the drilling and was in the process of loading the holes with explosives when he was struck by a rock fall, sustaining multiple fractures and lacerations. Plaintiff applied for and received workers' compensation benefits. He also filed a personal injury action against Harrison and Western, alleging that they had committed an intentional tort by failing to order him to cease operations and leave the area after the initial rock fall, resulting in a substantial certainty of injury. See *Kittell v. Vt. Weatherboard, Inc.*, 138 Vt. 439, 441, 417 A.2d 926, 927 (1980) (workers' compensation provides exclusive remedy for work-related injury absent "specific intent to injure"). Plaintiff also sued Harrison under a separate co-employee claim that Harrison had committed affirmative acts of negligence by ordering plaintiff to work in the pit after Harrison had been informed of the initial rock fall. See *Gerrish v. Savard*, 169 Vt. 468, 471, 739 A.2d 1195, 1198 (1999) (workers' compensation exclusivity does not prohibit employee's action against co-worker for negligence outside parameters of employer's nondelegable duty to maintain safe workplace). Plaintiff further alleged that defendants' misconduct had been willful, wanton, and malicious, entitling him to punitive damages.[1]

---

[1] Plaintiff's wife also sued for loss of consortium, but the jury awarded her no damages.

¶ 5. Defendants filed motions to dismiss and for summary judgment, arguing that workers' compensation provided the exclusive remedy for plaintiff's injuries, and that the evidence was insufficient to establish an exception to the rule of exclusivity for intentional injury. The court denied the motions. At the close of plaintiff's case in chief, and again at the conclusion of all the evidence, defendants moved for judgment as a matter of law on the basis of workers' compensation exclusivity. The court denied both motions, finding that the evidence was sufficient to raise a jury question as to whether defendants had knowledge to a "substantial certainty" that their actions would result in plaintiff's injuries. Plaintiff voluntarily withdrew his separate negligence claim against Harrison. Additionally, the court ruled that the evidence was insufficient to submit the issue of punitive damages to the jury.

¶ 6. Over objection, the court then instructed the jury that it was plaintiff's burden to prove that defendants had the "specific intent to injure him," but that such intent could be established in one of two ways: that defendants either "had the purpose or desire to cause him injury or that although the Defendants lack[ed] such purpose or desire they knew to a substantial certainty that their actions would bring about his injury."[2] Later, during its deliberations the jury sent a note to the court stating, "we need a good detailed definition of specific intent." After consulting with counsel, the court informed the jury that it had defined specific intent in the instructions already given, and offered no further definition.

¶ 7. The jury returned a special verdict in favor of plaintiff, finding that although neither defendant had a specific purpose or desire to injure him, both knew to a substantial certainty that their actions or inactions would injure plaintiff. The jury assigned separate damage awards to each

---

[2] The court expanded on the "substantial certainty" component as follows:

An employer cannot be held liable for accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable or malicious negligence, breach of statute or other misconduct of the employer short of genuine intentional injury. Regarding the second prong. The substantial certainty test. You should understand that mere risk, even a very high risk, is not enough to show substantial certainty. In other words, substantial certainty is more than the mere possibility of substantial probability, but is less than actual certainty. The intentional failure to furnish a safe place to work does not rise to a level of specific intent to injure unless the employer believes that its conduct is substantially certain to cause the injury. . . . In considering whether Mr. Mead has met his burden on this element you may consider whether the defendant's conduct violated applicable safety regulations. . . . Keep in mind that although violations of a safety regulation is relevant to whether a defendant acted with specific intent violations of a regulation without more is insufficient to support a finding of specific intent.

defendant, finding Western to be liable for medical expenses of $3044, pain and suffering of $40,000, and lost wages of $14,176, and Harrison to be liable for medical expenses of $9134, and pain and suffering of $50,000. The court entered a single judgment in favor of plaintiff for a total of $116,355.

¶ 8. Defendants subsequently filed post-trial motions for judgment as a matter of law, or in the alternative, new trial, restating their contention that the court had erred as a matter of law by allowing the jury to find a specific intent to injure based on a substantial certainty that injury would occur. Defendants also filed motions to amend the judgment to reflect the court's earlier determination that the judgment against defendants would be several and to reduce the award by the amount of workers' compensation benefits paid to plaintiff on defendants' behalf by their insurance carrier. Plaintiff, for his part, moved to alter the judgment to find defendants jointly and severally liable, and also moved for costs and prejudgment interest. The court entered an order denying all post-judgment motions except the request for separate verdicts and judgments, and issued amended judgments against Western for damages of $57,221 plus "plaintiff's costs of action" and against Harrison for $59,134 plus "plaintiff's costs of action."

¶ 9. On appeal, defendants challenge the court's denial of their motions for judgment as a matter law, claiming principally that the court erred by: (1) allowing plaintiff's lawsuit to proceed after he had elected to apply for and receive workers' compensation benefits; and (2) departing from the strict definition of "specific intent to injure" set forth in *Kittell*, 138 Vt. at 441, 417 A.2d at 927, and allowing a showing of such intent based on a "substantial certainty" that injury would result. Plaintiff has cross-appealed, asserting that the trial court erred in denying the motion for joint and several liability, and that a remand is necessary to clarify the court's intentions concerning the award of costs.

¶ 10. We turn first to defendants' contention that the court erred by allowing plaintiff to prove a "specific intent" to injure based on a showing that defendants knew to a "substantial certainty" their conduct would result in injury to plaintiff. See *Brueckner*, 169 Vt. at 122, 730 A.2d at 1090 (on review of motion for judgment as a matter of law, "[t]he question is whether the result reached by the jury is 'sound in law on the evidence produced.'") (quoting *Kinzer v. Degler Corp.*, 145 Vt. 410, 412, 491 A.2d 1017, 1018 (1995)). As will appear, our resolution of this issue renders the parties' remaining claims moot.

¶ 11. Subject to certain limited exceptions, Vermont's workers' compensation statute provides the exclusive remedy for workplace

injuries. 21 V.S.A. § 622.[3] The statute represents a "public policy compromise in which 'the employee gives up the right to sue the employer in tort in return for which the employer assumes strict liability and the obligation to provide a speedy and certain remedy' for work-related injuries." *Murray v. St. Michael's College,* 164 Vt. 205, 209-10, 667 A.2d 294, 298 (1995) (quoting *Lorrain v. Ryan,* 160 Vt. 202, 214, 628 A.2d 543, 551 (1993)); accord *Gerrish,* 169 Vt. at 470-71, 739 A.2d at 1197-98; *Dunham v. Chase,* 165 Vt. 543, 543, 674 A.2d 1279, 1280 (1996) (mem.) ("Under the law, employees gain an expeditious remedy [for workplace injuries] without the burden of proving fault; in exchange, employers' liability is limited.").

¶ 12. Like most other jurisdictions, we have recognized an exception to the exclusivity rule for intentional injuries committed by the employer. See *Kittell,* 138 Vt. at 441, 417 A.2d at 927 (workers' compensation system covers workplace injuries arising by "accident," not those intended by the employer); Comment, *Expansion of the "Deliberate Intention Exception" to Washington's Workers' Compensation Exclusivity: Following Birklid v. Boeing Co., When Does an Employer Intend Employee Injury?,* 32 Gonz. L. Rev. 225, 232 (1997) ("most jurisdictions recognize an intentional tort exception to the exclusive remedy provision of its workers' compensation system"). We stressed in *Kittell,* however, that the policy trade-off underlying the workers' compensation law was "best served by allowing the remedial system which the Legislature has created a broad sphere of operation." *Kittell,* 138 Vt. at 441, 417 A.2d at 927. Hence, we held that "[n]othing short of a specific intent to injure falls outside the scope of the Act." *Id.;* accord *Dunham,* 165 Vt. at 544, 674 A.2d at 1281 ("the exclusivity provision bars any claim against an employer short of intentional injury"). Under *Kittell,* even "wilful and wanton conduct leading to a sudden but foreseeable injury" is within the scope of the Act. 138 Vt. at 440, 417 A.2d at 926.

¶ 13. A growing number of jurisdictions have broadened the definition of specific intent beyond that set forth in *Kittell,* to include instances where the employer not only intends to injure the worker, but engages in conduct with knowledge that it is substantially certain to cause injury or death. See generally *Davis v. CMS Continental Natural Gas, Inc.,* 23 P.3d 288, 292-95 (Okla. 2001) (collecting cases); M. Doran, *The Substan-*

---

[3] Section 622 provides, in pertinent part, that the rights and remedies to which the employee is entitled under the workers' compensation statute "shall exclude all other rights and remedies of the employee." Under 21 V.S.A. § 618(a), "a worker [who] receives a personal injury by accident arising out of and in the course of employment" is entitled to compensation.

*tial Certainty Exception to Workers' Compensation,* 17 Campbell L. Rev. 413, 438-39 (1995) (summarizing various jurisdictions' approach to substantial certainty test); Annot., *What Conduct is Willful, Intentional,' or Deliberate Within Workmen's Compensation Act Provision Authorizing Tort Action for Such Conduct,* 96 A.L.R.3d 1064 (1979 & Supp. 2003) (collecting and summarizing cases); 6 A. Larson & L. Larson, Larson's Workers' Compensation Law §§ 103.04[2][a]-103.04[2][e], at 103-12-103-20.1 (2003) (discussing origin and development of substantial certainty test). On the continuum of tortious conduct, substantial certainty has been described as just below the most aggravated conduct where the actor intends to injure the victim; it is more than " 'mere knowledge and appreciation of a risk,'" *Pariseau v. Wedge Products, Inc.,* 522 N.E.2d 511, 514 (Ohio 1988) (quoting Prosser & Keeton, The Law of Torts 36 (5th ed. 1984)), "beyond gross negligence," *Birklid v. Boeing Co.,* 904 P.2d 278, 284 (Wash. 1995), and more egregious than even " 'mere recklessness'" in which the actor knows or should know that there is a strong probability that harm may result. *Pariseau,* 522 N.E.2d at 513 n.1 (quoting Restatement of the Law (Second) Torts, § 8A cmt. b (1965)); see Restatement of the Law (Second) Torts, § 500 cmt. f (differentiating reckless conduct, which requires "strong probability" of harm, from substantial certainty). Thus, the substantial certainty standard has been variously described as "tantamount to an intentional tort," *Woodson v. Rowland,* 407 S.E.2d 222, 228 (N.C. 1991), a "surrogate state of mind for purposefully harmful conduct," *Suarez v. Dickmont Plastics Corp.,* 639 A.2d 507, 518 (Conn. 1994) (Borden, J., concurring and dissenting), and "a substitute for a subjective desire to injure." *Millison v. E.I. du Pont de Nemours & Co.,* 501 A.2d 505, 514 (N.J. 1985).

¶ 14. The standard is not uniform. Some states that have modified their specific-intent exception have opted for a stricter test than substantial certainty, requiring a showing of knowledge by the employer that injury is "certain" or "virtually certain" to occur. See, e.g., *Millison,* 501 A.2d at 514 (substantial certainty standard requires showing of "virtual certainty"); *Zimmerman v. Valdak Corp.,* 570 N.W.2d 204, 209 (N.D. 1997) ("An employer is deemed to have intended to injure if the employer had knowledge an injury was certain to occur and willfully disregarded that knowledge."); *Fryer v. Kranz,* 616 N.W.2d 102, 106 (S.D. 2000) ("[s]ubstantial certainty ... should be equated with virtual certainty"); *Birklid,* 904 P.2d at 285 (intentional injury "means the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge"). Other states have enacted specific statutes codifying relatively stringent intent-to-injure exceptions in response to

more expansive court decisions. See, e.g., Mich. Comp. Laws § 418.131(1) (intentional tort exception applies where employer "had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge," modifying *Beauchamp v. Dow Chemical Co.*, 398 N.W.2d 882, 893 (Mich. 1986), which adopted substantial certainty test).

¶ 15. A number of state courts have also rejected invitations to adopt the "substantial certainty" standard, choosing instead to retain the strict requirement that the employer harbor "a specific intent to injure an employee." *Fenner v. Municipality of Anchorage*, 53 P.3d 573, 577 (Alaska 2002); see also *Limanowski v. Ashland Oil Co.*, 655 N.E.2d 1049, 1052-53 (Ill. App. Ct. 1995) (rejecting substantial certainty standard on ground that "specific intent to injure" is more consistent with purposes of workers' compensation statute); *Davis v. United States Employers Council, Inc.*, 934 P.2d 1142, 1150 (Or. Ct. App. 1997) (statutory exception for "deliberate" injuries must be narrowly construed to require evidence the employer "wish[ed] to injure"); *Lantz v. National Semiconductor Corp.*, 775 P.2d 937, 940 (Utah Ct. App. 1989) (rejecting plaintiff's argument that "knowing to a substantial certainty that injury will follow is sufficient to invoke the exception ... to the exclusiveness of the workers' compensation remedy"). Courts adopting the substantial certainty standard have also drawn harsh criticism from some commentators for "alter[ing] the balance of interests within the workers' compensation system," H. Leftwich, *The Intentional-Tort Exception to the Workers' Compensation Exclusive Remedy Immunity Provision: Woodson v. Rowland*, 70 N.C. L. Rev. 849, 880 (1992), employing a "vague" and "ill-defined" standard, J. Burnett, *The Enigma of Workers' Compensation Immunity: A Call to the Legislature for a Statutorily Defined Intentional Tort Exception*, 28 Fla. St. U. L. Rev. 491, 493, 517 (2001), and impinging upon the policy prerogatives of the legislative branch. See, e.g., Note, *Ohio's "Employment Intentional Tort": A Workers' Compensation Exception, Or the Creation of an Entirely New Cause of Action?*, 44 Cleve. St. L. Rev. 381, 404 (1996) (courts should defer to legislature "to determine the appropriate standard" for intentional tort exception); Leftwich, *supra*, 70 N.C. L. Rev. at 880 (changes in "delicate balance" underlying workers' compensation act "should come from the legislature").[4]

---

[4] We note that despite the trial court's diligent attempt here to instruct on the meaning of the substantial-certainty component of the specific-intent-to-injure exception, see n.2, *ante*, the jury submitted a note to the court during deliberations seeking a "good detailed definition of specific intent." The jury's experience here underscores the concern expressed by many that the "distinctions between negligence, recklessness and intent are subtle" and

¶ 16. Even those courts that have adopted the substantial-certainty test have stressed that it is intended to operate as a "very narrow exception," *Suarez*, 639 A.2d at 516, intended for the most "egregious employer conduct," *Millison*, 501 A.2d at 511, and hence is "to be strictly construed." *Sorban v. Sterling Eng'g Corp.*, 830 A.2d 372, 377 (Conn. App. Ct. 2003). As the New Jersey Supreme Court in *Millison*, 501 A.2d at 514, explained, "the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the Act is not circumvented simply because a known risk later blossoms into reality."

¶ 17. Turning to the case at bar, the trial court — as noted — concluded that our decision in *Kittell* did not preclude recognition of the substantial certainty standard, and found that the evidence adduced by plaintiff was sufficient to support the jury's finding based on this standard. Having carefully reviewed the record evidence, however, we are unable to agree with the court's evidentiary analysis. Even assuming that we were receptive to modifying *Kittell* consistent with the trial court's approach, and viewing the evidence in the light most favorable to the judgment, we do not believe that the record here "fairly and reasonably" supports a rational inference that defendants knew to a *substantial certainty* their actions would result in injury to plaintiff. *Gero v. J.W.J. Realty*, 171 Vt. 57, 59, 757 A.2d 475, 476 (2000); see also *Brueckner*, 169 Vt. at 122, 730 A.2d at 1090 (on appeal from denial of motion for judgment as a matter of law, "this Court . . . views the evidence in the light most favorable to the nonmoving party and excludes the effects of any modifying evidence").[5]

¶ 18. Viewed in light of this standard, the evidence shows — at most — that Harrison directed plaintiff and his co-workers to continue to work in the quarry knowing that a rock fall had recently occurred and that it represented a dangerous situation that required attention. Plaintiff's expert, a former inspector for the federal Mine Safety and Health Administration, also opined that another fall was substantially certain to

that any substantial-certainty test must be narrowly applied "lest the statutory framework of workers' compensation be circumvented." Leftwich, *supra*, 70 N.C. L. Rev. at 881.

[5] Although defendants' principal contention below, as on appeal, was that the court erred in deviating from *Kittell's* strict intent-to-injure test, they also argued in their motion for judgment as a matter of law at the close of the evidence, and in their subsequent post-trial motion for judgment as a matter of law, that the evidence was insufficient to establish that defendants' conduct exceeded the standard of aggravated negligence to the point of substantial certainty of injury. Defendants relied in this regard on *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407-08 (Tex. 1985), which held that the defendant's knowing failure to maintain a safe workplace did not prove that defendant knew to a substantial certainty that the employee would be injured.

follow the first, and that allowing the drilling to proceed violated at least two federal safety regulations. He offered no testimony, however, tying a second rock fall to any particular time-frame. All that the evidence shows, therefore, is a substantial risk of second fall, but there is no evidence that it was substantially certain to occur within a few hours, or a day, or a month. Nor was there any evidence presented of prior falls leading to injuries under similar circumstances at the Western quarry or elsewhere within defendants' knowledge. Thus, the evidence cannot support a reasonable inference that defendants knew to a substantial certainty that the decision directing plaintiff to continue to work until Harrison returned from his errand would result in plaintiff's injury. Indeed, neither Harrison nor anyone else on site — including plaintiff — expected the accident to occur. Even as he waited for word from Harrison as to how to proceed, plaintiff — an experienced quarry worker in his own right — voluntarily commenced to complete the drilling that he had started the day before, and later expressed surprise at the occurrence of the second fall. The evidence thus belies any rational inference that Harrison knew to a substantial certainty that directing plaintiff to work until he returned to inspect the area would result in plaintiff's injury.

¶ 19. This is not a case where an employer, for example, knowingly orders workers to expose themselves to dangerous fumes or toxic materials that are a constant and unavoidable presence in the workplace, see, e.g., *Millison*, 501 A.2d at 508-09, or instructs an employee, over his objection and at the risk of termination if he refused, to operate a table-saw knowing that other employees had previously suffered injuries because of the lack of a safety guard which the employer had willfully removed to improve production speed. *Mandolidis v. Elkins Indus., Inc.*, 246 S.E.2d 907, 914-15 (W. Va. 1978). Here, there is little doubt that defendants were negligent in exposing plaintiff to the known risk of a subsequent rock fall, but unlike these other cases there is no evidence from which a jury could reasonably infer that defendants *knew* the injury to plaintiff was *substantially certain* to occur. This conclusion is buttressed by the trial court's own ruling that plaintiff failed to adduce sufficient evidence to submit the question of punitive damages to the jury, a standard which may be satisfied either "[w]here the defendant's wrongdoing has been intentional and deliberate," *Brueckner*, 169 Vt. at 129, 730 A.2d at 1095, or by "conduct showing a *reckless* or *wanton* disregard of one's rights." *Id.* (internal citations omitted; emphasis added). We agree, and conclude, a fortiori, that the evidence also failed to demonstrate misconduct by defendants evidencing a knowing and willful disregard of risks that made injury to plaintiff a substantial certainty.

¶ 20. While their standards may vary, decisions from other states that have adopted the substantial certainty test uniformly hold that the exception must be reserved for the exceptional case, where it can be said that the employee's injury — viewed in light of the risks known to the employer at the time — was not truly an accident. This is not such a case. We hold, therefore, that the evidence was insufficient as a matter of law to support the jury's finding that defendants knew to a substantial certainty their actions would result in injury to plaintiff. Accordingly, the judgments in favor of plaintiff and against defendants must be reversed. Our holding renders it unnecessary to address the parties' remaining claims.

*Reversed.*