NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 107

No. 2017-342

| | |
|---|---|
| Ira Martel | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Connor Contracting, Inc., Jason Clark, and Stephen Connor | February Term, 2018 |

Mary Miles Teachout, J.

Vincent Illuzzi, Orleans, for Plaintiff-Appellant.

Pietro J. Lynn and Sean M. Toohey of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for Defendants-Appellees Connor Contracting, Inc. and Stephen Connor.

John E. Brady of Brady/Callahan, Springfield, for Defendant-Appellee Jason Clark.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** This case is about two separate exceptions to the exclusivity rule of workers' compensation, the first of which applies when an employee is injured other than by accident, and the second of which applies when a person or entity can be held personally liable for an employee's injuries. Plaintiff Ira Martel appeals the trial court's decision granting summary judgment on his personal injury claims in favor of his employer, defendant Connor Contracting, Inc., and two co-employees, defendants Jason Clark and Stephen Connor. We hold that plaintiff's action against Connor Contracting is barred by the exclusive remedy provision of Vermont's Workers' Compensation Act. We further hold that plaintiff's action against the individual

defendants is barred because the acts that plaintiff alleges give rise to liability fell within the scope of a nondelegable corporate duty and defendants, therefore, cannot be held personally liable for plaintiff's injuries. Accordingly, we affirm.

¶ 2. The following facts are undisputed except where otherwise noted. In August 2013, plaintiff was part of a four-person crew employed by Connor Contracting to perform roof repair work at the Montpelier Health Center. Defendant Jason Clark was the worksite foreperson, and defendant Stephen Connor was the treasurer of Connor Contracting and one of the company owners. While working on the project, plaintiff and the other members of the roofing crew used a personal-fall-arrest system (PFAS), which was safety equipment provided by Connor Contracting and required by the company's safety program rules, the federal Occupational Safety and Health Administration, and the Vermont Occupational Safety and Health Administration (VOSHA). See 29 C.F.R. § 1926.501(b)(2)(i) (2018) (requiring that employees be protected from falling by guardrail, safety net, or PFAS when working six feet or more above lower level); CFR 1910 Subpart D Walking Working Surfaces; Subpart I Personal Protective Equipment, Code of Vt. Rules 24 050 004, http://labor.vermont.gov/wordpress/wp-content/uploads/Subpart-D_Clean-text.pdf [https://perma.cc/B8C8-RGAE] (incorporating 29 C.F.R. § 1910.28(b)(1)(i) by reference and requiring employers to provide employees fall protection, including guardrail, safety net, or personal fall protection system, for work performed four feet or more above lower level). The PFAS is a four-part safety system: a harness worn by the worker; an anchor, which is typically part of the building where the work is taking place; a lanyard; and a D ring. The lanyard is attached to the anchor point and the D ring. The PFAS is designed to catch users if they fall off the elevated work surface and thereby prevent a potentially injuring impact.

¶ 3. The Health Center roofing project was scheduled for completion on August 13, 2015. Plaintiff and two other members of the original work crew remained at the site on the last

2

day of the project, completing the final work on the soffit of the building's main roof.[1]  Defendant Clark, the worksite foreman, was not on site.  The soffit work had to be completed by standing on the roof of an entrance porch below the main roof because the mechanical boom lift at the site could not reach this particular area of the roof.  The entrance porch roof was ten to fifteen feet above the ground.  Plaintiff was completing the soffit work when he fell from the edge of the roof, hit the ground below, and was injured.[2]  He was not wearing a PFAS at the time he fell.  The parties dispute whether a complete PFAS system was still at the project site on that day and available for plaintiff's use.  Plaintiff alleges that Connor Contracting had moved the D ring component of the PFAS to a different worksite the day before.  More specifically, he alleges that defendant Clark removed the D ring from the site under the direction of defendant Stephen Connor.  Thus, plaintiff alleges that he was left with only a harness and lanyard at the site and no way to attach the harness to an anchor point.  Connor Contracting disputes the removal of the PFAS and states that defendant Clark left two harnesses and lanyards at the project site.[3]

¶ 4.    Plaintiff filed a workers' compensation claim after his accident and received benefits.  In July 2016, plaintiff filed this action, alleging separate causes of action against Connor Contracting and the individual defendants.  Plaintiff sought damages in both—against Connor

---

[1]  The soffit is the underside of the eave of the roof.

[2]  The record does not describe the precise nature of the work that plaintiff was performing on the soffit when he fell.  The trial court's summary judgment decision emphasized that plaintiff was working on a flat roof when he fell, for example by stating that "there is no indication in the facts that anyone should have known that Mr. Martel would fall from the roof.  Nothing in the record explains why being on a flat roof presents such an acute risk of injury that it is substantially certain that a fall will occur."  The trial court's decision does not mention that plaintiff was working on the soffit, nor does that decision consider whether work on the underside of the edge of the roof above could affect the likelihood of injury.

[3]  Defendants' filings in the trial court discuss only the harness and lanyard and do not mention whether the D ring was left on site.  On appeal, defendants "dispute that the safety equipment (harness and lanyard) that remained on site was insufficient to have prevented Mr. Martel's fall if he had used it as he was trained."

3

Contracting on the theory that the company had acted with substantial certainty of causing him injury or death when it removed parts of the PFAS from the Health Center worksite, and against the individual defendants on a coemployee-personal-liability theory based on the same alleged removal of required safety equipment. The trial court granted defendants summary judgment on both claims, deciding that workers' compensation provided plaintiff's sole remedy for the injuries he sustained, and accordingly plaintiff could not pursue an alternate remedy against either Connor Contracting or the individual defendants on the facts alleged. Plaintiff now appeals.

¶ 5. This Court reviews "summary judgment decisions de novo, using the same standard as the trial court." Gauthier v. Keurig Green Mountain, Inc., 2015 VT 108, ¶ 14, 200 Vt. 125, 129 A.3d 108. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). A fact is material if it might affect the outcome of the action. Gauthier, 2015 VT 108, ¶ 14. When we consider the facts, "we give the nonmoving party the benefit of all reasonable doubts and inferences." H & E Equip. Servs., Inc., v. Cassani Elec., Inc., 2017 VT 17, ¶ 10, 204 Vt. 559 , 169 A.3d 1308 (quotation and alteration omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Gauthier, 2015 VT 108, ¶ 14 (quotation omitted).

¶ 6. Plaintiff raises two arguments on appeal. First, he argues that the trial court should have denied summary judgment for defendant Connor Contracting because the removal of PFAS components raises a jury question concerning whether Connor Contracting acted with the level of intent to injure plaintiff required to circumvent the exclusive remedy provision of the Workers' Compensation Act under Vermont law. Second, he asserts that the trial court should have denied summary judgment for the individual defendants because the actions of defendants Clark and

4

Connor were outside of the scope of nondelegable corporate duties and thus gave rise to personal liability for plaintiff's injuries. We begin with plaintiff's argument as to Connor Contracting.[4]

¶ 7. Plaintiff's claim against Connor Contracting depends on whether his injuries can be said to have occurred "accidentally." If they occurred accidentally, then the Workers' Compensation Act bars an alternate remedy. Conversely, if plaintiff's injuries can be characterized as nonaccidental, then plaintiff may pursue an alternate remedy. Our analysis of this question therefore starts with the workers' compensation statute, which in the usual course provides an exclusive remedy—"the rights and remedies granted by [workers' compensation] to an employee on account of a personal injury for which he or she is entitled to compensation . . . shall exclude all other rights and remedies of the employee . . . at common law or otherwise on account of such injury." 21 V.S.A. § 622. An employee is entitled to collect workers' compensation benefits if the employee "receives a personal injury <u>by accident</u> arising out of and in the course of employment by an employer." <u>Id</u>. § 618(a)(1) (emphasis added). In this case, it is undisputed that plaintiff was a statutory employee of Connor Contracting for purposes of the Workers' Compensation Act, defendant Connor Contracting was plaintiff's statutory employer, and plaintiff was injured "in the course of [his] employment." <u>Id</u>.; see also <u>id</u>. §§ 601(3) (defining employer), 601(14) (defining employee). The only question, then, is whether plaintiff's injuries occurred "by

---

[4] Plaintiff argued in his complaint, and again in his opposition to defendants' motion for summary judgment, that his injuries could not be said to have occurred accidentally because removal of the PFAS components made his injuries "substantially certain" to occur. He refocuses his argument on appeal, framing it instead to suggest that his injuries cannot be said to have occurred accidentally because removal of the PFAS components indicates an "intent to injure" him. Defendants argue that plaintiff waived his argument that defendants intentionally injured him by focusing on the substantial certainty of injury in the trial court. <u>Jordan v. Nissan N. Am., Inc.</u>, 2004 VT 27, ¶ 10, 176 Vt. 465, 853 A.2d 40 ("It is well settled . . . that matters not raised at trial may not be raised for the first time on appeal."). Because both the intent-to-injure and substantial-certainty tests are premised on the idea that an employer has acted in such a way that an employee has been injured other than by accident, we consider plaintiff's essential argument preserved. That is, because plaintiff's argument in both the trial court and on appeal has essentially been that his injuries were not sustained "accidentally," we do not consider the precise intent element of plaintiff's claim dispositive for purposes of preservation.

accident" as that phrase is defined within the context of workers' compensation. Id. § 618(a). As explained more fully below, we hold that the trial court correctly granted summary judgment to Connor Contracting on this question.

¶ 8.    Three cases are relevant to our discussion here: Kittell v. Vermont Weatherboard, Inc., 138 Vt. 439, 417 A.2d 926 (1980) (per curiam); Mead v. Western Slate, Inc., 2004 VT 11, 176 Vt. 274, 848 A.2d 257; and Stamp Tech, Inc. v. Lydall/Thermal Acoustical, Inc., 2009 VT 91, 186 Vt. 369, 987 A.2d 292.  In Kittell, the earliest of these three cases, the plaintiff alleged that he was injured after his employer had him operate a saw, without any training or experience, from which the employer had removed all safety equipment, and that this constituted "wanton and wilful acts and omissions" that should permit recovery beyond workers' compensation.  138 Vt. at 440, 417 A.2d at 926.  This Court framed the issue as "whether [the plaintiff's] complaint pleads a cause of action outside the scope of" workers' compensation—put more precisely, the Court had to determine "whether plaintiff's allegation of wilful and wanton conduct leading to a sudden but foreseeable injury constitutes personal injury by accident." Id. (quotation omitted).  We explained:

> The overwhelming weight of authority in other jurisdictions is that "the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury."

Id. at 441, 417 A.2d at 927 (quoting 2A A. Larson, Workmen's Compensation Law § 78.13, at 13-5 (1976)).  We accordingly held that "[n]othing short of a specific intent to injure falls outside the scope of the [Workers' Compensation] Act," and that, because the plaintiff alleged wilful and wanton action, not action taken with specific intent to injure, he could not pursue an alternate, common-law remedy in place of workers' compensation.  Id.

¶ 9.    Mead presented essentially the same issue as Kittell.  There, a quarry employee injured in a rock fall at his worksite collected workers' compensation but also filed a personal

6

injury action against his employer, alleging that evidence of a recent rock fall at the same location should have prompted the employer to stop operations at that location. We described the employee's claim as "alleging that [the employer] had committed an intentional tort by failing to order [the employee] to cease operations and leave the area after the initial rock fall, resulting in a substantial certainty of injury." 2004 VT 11, ¶ 4. The trial court denied the employer's motion to dismiss, which argued that the Workers' Compensation Act barred the employee from seeking an alternate remedy, and the action proceeded to a jury trial. The court instructed the jury that in order to find for the employee, the jury must conclude that he had presented sufficient evidence to prove that his employer "had the 'specific intent to injure him,' but that such intent could be established in one of two ways: that [the] defendants either 'had the purpose or desire to cause him injury or that although the [d]efendants lacked such purpose or desire they knew to a substantial certainty that their actions would bring about his injury.' " Id. ¶ 6; see also Restatement (Second) of Torts § 8A (1965) ("The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."); Reed Tool Co. v. Copelin, 689 S.W.2d 404, 406 (Tex. 1985) (stating workers' compensation does not bar alternate remedy where employee is injured intentionally, specific intent to injure is "fundamental difference" between negligent and intentional injuries, and adopting two-prong Restatement (Second) of Torts § 8A definition of intent as definition of specific intent to injure). Thus, while the broader issue in Mead was like that in Kittell, the narrow question before the Court was whether the trial court's instructions to the jury were correct—that intent to injure could be proved where an employer had knowledge of the substantial certainty of injury.

¶ 10. We did not answer this narrow question in Mead. Instead, we explained that the evidence presented in support of the employee's claim was insufficient to satisfy either intent to injure or substantial certainty. Mead, 2004 VT 11. ¶ 18. We further explained that, "[e]ven

7

assuming that we were receptive to modifying Kittell consistent with the trial court's approach . . . we do not believe that the record here 'fairly and reasonably' supports a rational inference that [the employer] knew to a substantial certainty their actions would result in injury to [the employee]." Id. ¶ 17. Though the facts of Mead meant that we did not need to engage directly with the trial court's interpretation of Kittell, this statement means that Kittell's scope is narrow—and that we would need to modify the holding in Kittell to permit an injured employee to seek a remedy other than workers' compensation where the employer, although having no intent to injure, knew that injury to the employee was substantially certain to occur. Put another way, Mead supports reading Kittell to hold that an injury is intentional only when an employer "desires to cause [the] consequences of his act," but not when the employer "believes that the consequences are substantially certain to result from" an act. Restatement (Second) of Torts § 8A.

¶ 11. Stamp Tech, like Kittell and Mead, arose from an employee's claim that his workplace injuries were not "an accident" and consequently that workers' compensation did not bar a common law remedy, in this case for injuries sustained when a 200-ton press machine that may not have had safety guards crushed the employee's arm. 2009 VT 91, ¶¶ 25-26. As in Mead, both the substantial certainty and intent to injure standards came into play in the trial court; here, in the trial court's decision granting summary judgment in favor of the employer on the exclusive-remedy question, wherein the court addressed the employee's claim under both standards. Id. ¶ 28. In reviewing that decision, and ultimately reversing it, we expressly avoided considering whether to adopt the substantial-certainty-of-injury standard—"[w]ithout expressing an opinion as to whether we would entertain [the employee's] invitation to adopt some form of a substantial certainty exception to the Vermont Workers' Compensation Act's exclusive remedy provision, we hold that the superior court erred in granting summary judgment in favor of [the employer]." Id. ¶ 29.

¶ 12. Nonetheless, plaintiff in this case argues that our decision in Stamp Tech may be read to implicitly adopt and apply a substantial-certainty standard rather than Kittell's intent-to-injure standard. We disagree. Our holding in Stamp Tech was narrow and turned on the kind of decision on appeal—summary judgment—and the correct standard of review for that decision. The trial court had concluded in its summary judgment decision in favor of the employer that "the most that [could] be adduced from the undisputed facts, and the evidence in the record, [was] that [the employer] knowingly permitted a hazardous work condition to exist." Id. ¶ 30 (alterations omitted). This statement suggests that the trial court found that intent to injure under Kittell is not satisfied simply because hazardous work conditions exist. We explained that the trial court's decision suggested that the employee had not been given the benefit of reasonable doubts and inferences, as the nonmoving party must be on summary judgment. Id. ¶ 31; see also V.R.C.P. 56(a). We accordingly reversed because the record included disputed facts—whether the safety equipment on the press machine existed and, if it did, whether it had been removed—that, when viewed in the light most favorable to the employee, were material and thus rendered summary judgment inappropriate. Stamp Tech, 2009 VT 91, ¶ 31.

¶ 13. Plaintiff's argument concerning the potential disconnect between Stamp Tech's avoidance of whether to adopt the substantial-certainty standard and what plaintiff sees as the decision's implicit application of exactly that standard also reaches a footnote in the opinion. The footnote addressed the dissent's argument that installation of some safety equipment on the press machine "belie[d] any claim that [the employer] intended to injure its employees with this particular machine." Id. ¶ 37 (Burgess, J., dissenting). In response the majority wrote:

> We disagree with the inference the dissent draws from "the undisputed fact that the employer installed light guards on the machine." When viewed in isolation, the fact may perhaps be construed as "belying any claim that the employer intended to injure its employees." Viewed in the appropriate context and in the light most favorable to [the employee], however, this suggests that [the employer] appreciated the dangerousness of the press, but

9

nevertheless rendered the light guards ineffective by removing the hard guard. We cannot say that a reasonable fact-finder could not infer intent to injure based on these circumstances.

Id. ¶ 31 n.5 (citations omitted) (alterations omitted). As with the central holding in Stamp Tech, when considered against the backdrop of the kind of decision on appeal—and bearing in mind the correct standard of review for that decision—this footnote simply means that the record included disputed material facts, rendering summary judgment inappropriate. Thus, Stamp Tech did not broaden Kittell's reach, nor did it impliedly adopt a substantial-certainty standard.

¶ 14. Kittell remains the standard in Vermont, and specific intent under Kittell is required to prove that an injury that would otherwise be compensable through workers' compensation has not occurred accidentally and the employee may, therefore, pursue an alternate remedy. Intent to injure under Kittell is a high bar—it reaches only those instances where an employer deliberately causes an employee an injury. See Kittell, 138 Vt. at 440, 417 A.2d at 926 (requiring more than that injury be "sudden but foreseeable").

¶ 15. Plaintiff has not alleged facts that reach Kittell's bar. Even taking the facts in the light most favorable to plaintiff and assuming, therefore, that Connor Contracting rendered the PFAS useless by removing the D ring and preventing plaintiff from attaching a harness to an anchor point, the record does not include facts permitting the inference that Connor Contracting deliberately intended to harm plaintiff. That is, the record does not give rise to a reasonable inference that Connor Contracting specifically intended to injure plaintiff, and consequently does not give rise to a reasonable inference that plaintiff's injuries fall outside the spectrum of injuries occurring "by accident." 21 V.S.A. § 618(a)(1). Compare De Coigne v. Ludlum Steel Co., 297 N.Y.S. 636, 641 (App. Div. 1937) (concluding workers' compensation did not provide exclusive remedy where complaint charged employer "with wrongfully, intentionally, and knowingly selling and delivering to [employee] for immediate consumption food containing poisonous and deleterious ingredients, rendering the same injurious to health," employee ate food, and became

10

sick), with <u>Santiago v. Brill Monfort Co.</u>, 205 N.Y.S.2d 919, 920 (App. Div. 1960) (concluding workers' compensation exclusivity provision barred employees' claims that employer's "wanton, intentional, unlawful and affirmative wrongful acts in removing certain safety guards from machines operated by [employees] . . . constituted an assault on [employees] by [employer]" because employees did not allege "guards were removed with a deliberate intent to injure" but instead alleged "removal was for the sole purpose of increasing production for greater increment and profits" (quotation omitted)).

¶ 16. Plaintiff essentially asks us to hold that the failure to comply with safety regulations is sufficient in and of itself to meet the level of intent necessary to circumvent workers' compensation as an exclusive remedy. Such a holding would be contrary to Vermont statute. Employers have a duty to "furnish to each of [their] employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or significant physical harm to [their] employees" and to "comply with safety and health standards promulgated under the VOSHA Code." 21 V.S.A. § 223(a); see also <u>id</u>. § 201 (delegating rulemaking authority to promulgate regulations consistent with federal Occupational Safety and Health Act of 1970 through state VOSHA Code). But the statute also provides that:

> Nothing in the VOSHA Code shall be construed to supersede or in any manner affect the workers' compensation laws of this State . . . or enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.

<u>Id</u>. § 222(2). Given this statutory restriction, and in the absence of facts giving rise to an inference of specific intent, we cannot conclude that Connor Contracting's failure to provide a working PFAS is sufficient to permit plaintiff to seek a remedy beyond workers' compensation.

¶ 17. Because we hold that under Vermont law an injured employee must show specific intent to injure, and that plaintiff has not alleged facts that would support a finding of specific

11

intent here, we need not address plaintiff's argument concerning the likelihood or certainty that he would be injured because Connor Contracting removed PFAS components. We turn now to plaintiff's remaining argument, and as with his first argument, we affirm the trial court's decision granting the individual defendants summary judgment.

¶ 18. Plaintiff argues that defendants Jason Clark, the Health Center project foreperson, and Stephen Connor, an officer of Connor Contracting, are individually liable for his injuries because they were not performing a duty of Connor Contracting when they removed PFAS components from the worksite. This removal, plaintiff argues, falls outside the scope of a corporation's nondelegable duty to provide a safe workplace and amounts to a breach of the individual defendants' personal duty to plaintiff. We disagree.

¶ 19. As explained above, workers' compensation generally provides employees injured accidentally in the course of their employment an exclusive remedy. 21 V.S.A. § 622. One exception to this presumption of exclusivity applies to intentionally inflicted injuries; another is for injuries caused by someone other than the employer:

> Where the injury for which compensation is payable under [the Workers' Compensation Act] was caused under circumstances creating a legal liability to pay the resulting damages in some person other than the employer, the acceptance of compensation benefits or the commencement of proceedings to enforce compensation payments shall not act as an election of remedies, but the injured employee . . . may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section.

Id. § 624(a). A co-employee or corporate officer may be subject to personal liability for acts or omissions under this section "only for those negligent acts or omissions that breach a personal, rather than a nondelegable corporate, duty owed to a plaintiff employee." Dunham v. Chase, 165 Vt. 543, 543, 674 A.2d 1279, 1280 (1996) (mem.). Thus, the determination of whether a coemployee may be held personally liable for an employee's injuries focuses on "the nature of the

12

obligation the plaintiff alleges has been breached." Garrity v. Manning, 164 Vt. 507, 513, 671 A.2d 808, 811 (1996).

¶ 20. We have consistently held that an employer's duty to provide a safe workplace is a nondelegable corporate duty. See, e.g., Chayer v. Ethan Allen, 2008 VT 45, ¶ 24, 183 Vt. 439, 954 A.2d 783; Dunham, 165 Vt. at 544, 674 A.2d at 1280; Garrity, 164 Vt. at 513, 671 A.2d at 811. This duty includes the specific "duty to provide safe equipment for the execution of the employment task." Gerrish v. Savard, 169 Vt. 468, 473, 739 A.2d 1195, 1199 (1999). Accordingly, a plaintiff "must allege something more than a breach of the corporate duty to provide a safe workplace" to impose co-employee, personal liability on the defendants. Dunham, 165 Vt. at 544, 674 A.2d at 1280 (quotation omitted). In this case, plaintiff has alleged only acts that fall within the scope of nondelegable corporate duties.

¶ 21. Plaintiff's argument centers on removal of the PFAS components from the worksite. But even if a complete PFAS was not available to plaintiff on the date of his injuries, and even assuming the individual defendants negligently removed PFAS components, these facts still do not fall outside the scope of the nondelegable duty to provide a safe workplace and safe equipment for an employee. Gerrish is directly on point on this question. There, the employee alleged that the employer breached a personal duty by failing to repair a crane's faulty brake and frayed cable, such that the crane cable snapped and a granite block fell on the employee, causing him injury. We explained that the employer's decisions still fell within the scope of the nondelegable corporate duty, even assuming the employer negligently decided that the crane could operate safely without repairing either the brake or the cable. Gerrish, 169 Vt. at 473, 739 A.2d at 1199. Though the employer "altered the working environment and thereby increased the risk for all employees," the nature of the duty implicated meant that the employer was nonetheless "exercising managerial prerogatives"—and because these "managerial prerogatives" were exercised "in fulfillment of the employer's nondelegable duties," the employer's actions were not

13

such as would give rise to personal liability for the employee's injuries.  Id. at 473-74, 739 A.2d at 1199-1200.  The same reasoning applies here.  Even if the individual defendants negligently removed the PFAS, the duty to provide a safe workplace is a nondelegable corporate duty and the presence, or absence, of the PFAS is part of the safe workplace equation.[5]  Thus, the facts alleged by plaintiff show only that the individual defendants acted in the exercise of their "managerial prerogative" to fulfill a corporate duty, and accordingly the individual defendants may not be held personally liable for plaintiff's injuries under 21 V.S.A. § 624(a).

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 22.   **ROBINSON, J., concurring in the mandate only.**   I agree that the trial court's decision granting summary judgment to defendant Connor Contracting should be affirmed because plaintiff failed to provide sufficient evidence to prove that defendant acted with the requisite intent to allow plaintiff to avoid the exclusive-remedy bar of the Workers' Compensation Act.  But I disagree with the majority's reasoning, and in particular its unnecessary decision to readopt the specific-intent standard set forth in Kittell v. Vermont Weatherboard, Inc., 138 Vt. 439, 417 A.2d 926 (1980).  With respect to Connor Contracting, I therefore concur in the mandate only.[6]

---

[5]  In plaintiff's brief, he alleges that the individual defendants removed PFAS equipment from the jobsite because they intended to use it themselves at another site.  Plaintiff does not cite the record for this alleged fact.  However, even if this is true, it would not affect the conclusion here that plaintiff failed to present evidence that the individual defendants committed any acts outside the scope of the employer's nondelegable corporate duties.

[6]  I agree that the trial court properly granted summary judgment to the individual defendants, Jason Clark and Stephen Connor, for the reasons stated by the majority.

14

¶ 23.     I would not readopt the Kittell standard in this case.  We don't need to in order to resolve this case, as plaintiff's claim fails under any potentially applicable standard.  I would not choose to do so for two related reasons.  First, I would not depart from our approach in recent cases of deferring the question until we are presented with an appropriate case.  Second, around the country, this area of law is in flux.  Rather than adding another zag to the zig-zag of our law on this issue, I would defer deciding this question until presented with a case that requires us to reach it, benefitting in the meantime from the lessons of our sister states and the developing law around the country.

¶ 24.     We need not determine which potential definition of "intent" applies because plaintiff failed to present sufficient facts to satisfy either an intent-to-injure or a substantial-certainty standard.  Taken in the light most favorable to plaintiff, the facts could support a determination that employer disabled the personal fall arrest system by removing an essential part of the safety system from the worksite, preventing plaintiff from attaching a harness to an anchor point.  However, there is no evidence that employer specifically intended to injure plaintiff by removing the part.  Furthermore, the undisputed evidence is that plaintiff was instructed to work on a flat roof.  Plaintiff has failed to show that he was substantially certain to fall off the roof in question or that his employer knew with substantial certainty that plaintiff would be harmed without the safety equipment under the circumstances.  Thus, plaintiff's appeal can be resolved without defining the scope of the intentional-tort exception to the exclusivity bar.

¶ 25.     One reason I would not readopt the Kittell definition of intent in this case is that we have consistently and appropriately declined to decide whether the definition of "intentional" acts is limited by our analysis in Kittell when the circumstances of a case have not required us to reach the question.  In Kittell, this Court recognized an exception to the Workers' Compensation Act's application and associated exclusivity bar for intentional torts.  Id. at 441, 417 A.2d at 927.  The Court reasoned that the Act provides benefits, which are the exclusive remedy, for an employee

15

who is injured <u>by accident</u> arising out of and in the course of employment, <u>id.</u> at 440, 417 A.2d at 926, but not for intentional injuries. Following the near-universal rule at the time, the Court defined "intentional" narrowly, holding that "[n]othing short of a specific intent to injure falls outside the scope of the Act." <u>Id</u>. at 441, 417 A.2d at 927 (citing decisions from other jurisdictions). We therefore affirmed the dismissal of plaintiff Kittell's personal-injury action against his employer because although he alleged that he was an inexperienced worker ordered to work without instructions or warnings at a multiple saw end trim from which the employer had removed all safety devices, he failed to assert that the employer acted with the intent to injure him. <u>Id</u>.

¶ 26. Twenty-four years later, we questioned the continuing vitality of the <u>Kittell</u> definition of "intent" in <u>Mead v. Western Slate, Inc.</u> 2004 VT 11, 176 Vt. 274, 848 A.2d 257. In <u>Mead</u>, a quarry employee alleged that his supervisor and employer had committed an intentional tort by failing to order him to cease operations and leave the quarry after a rock fall had occurred. The trial court instructed the jury that the employee could prove the defendants had the requisite specific intent to injure him by showing either that the defendants had the "purpose or desire to cause him injury" or that "they knew to a substantial certainty that their actions would bring about his injury." <u>Id</u>. ¶ 6. The jury found in favor of the employee, finding that the defendants knew to a substantial certainty that their actions or inaction would injure him.

¶ 27. We reversed on appeal. In doing so, we explored the significant evolution in the law regarding the scope of the exclusivity bar in courts across the country over the decades since <u>Kittell</u> was decided. <u>Id</u>. ¶¶ 13-16. We noted that a growing number of jurisdictions had expanded the definition of specific intent "to include instances where the employer not only intends to injure the worker, but engages in conduct with knowledge that it is substantially certain to cause injury or death." <u>Id</u>. ¶ 13 (citing decisions). Some states had adopted a more stringent version of the test

16

requiring virtual certainty of injury, while still others had chosen to retain the strict intent-to-injure standard. Id. ¶¶ 14-15.

¶ 28. We ultimately concluded that it was unnecessary to decide whether to adopt a substantial-certainty standard, because the evidence presented to the jury was insufficient to support its decision in favor of the plaintiff even under that less stringent test. Id. ¶ 17. Specifically, although the plaintiff showed that there was a risk of a second rockfall in the quarry, there was no evidence of when such a fall would occur or that previous falls had led to injuries under similar circumstances. Id. ¶ 18. The evidence therefore could not support a reasonable inference that the defendants knew with substantial certainty that directing the plaintiff to continue to work in the quarry until the supervisor returned from an errand to inspect the area would result in the plaintiff's injury. Id. In reaching this conclusion, we neither reaffirmed nor rejected the more restrictive definition of intent in Kittell, leaving the door open to a future determination of the proper definition of "intent." Id. ¶ 17.

¶ 29. In a more recent case, we again deferred judgment on the question of whether, for purposes of the exception to workers' compensation exclusivity, an employer "intends" to cause an injury that is "substantially certain" to arise from the employer's intentional actions. See Stamp Tech, Inc. ex rel. Blair v. Lydall/Thermal Acoustical, Inc., 2009 VT 91, 186 Vt. 369, 987 A.2d 292. In Stamp Tech, an injured worker sued his employer after his arm was crushed in an industrial press, claiming that the employer intentionally created the dangerous condition that caused his injury by removing a "hard guard" from the press. Id. ¶ 1. The trial court granted summary judgment to the employer on the ground that the employee had not set forth sufficient evidence to establish an exception to the exclusivity bar under either the Kittell specific-intent standard or the substantial-certainty standard discussed in Mead.

¶ 30. This Court reversed and remanded. We declined to "express[] an opinion as to whether we would entertain [the] plaintiff's invitation to adopt some form of a substantial certainty

17

exception" to the exclusive remedy provision. Id. ¶ 29. However, we concluded that it was premature for the trial court to grant summary judgment to the employer "on the issue of intent or substantial certainty" because the facts alleged by the employee were "susceptible to competing inferences" and there were facts in dispute, i.e., whether the hard guard ever existed and, if so, whether the employer removed it from the press. Id. ¶ 31.[7]

¶ 31.    I don't deny that this posture leaves the law lacking clarity. However, I am loathe to readopt the Kittell definition of intent when we have not been presented with a case that requires us to do so. See State v. Berini, 167 Vt. 565, 566, 701 A.2d 1055, 1056 (1997) (mem.) ("While not slavish adherents to stare decisis, [i.e., the requirement that courts follow precedential judicial decisions,] we generally require more than mere disagreement to overturn a decision, particularly one of such recent vintage." (citation omitted))

¶ 32.    I'm especially reluctant to dive in to this question prematurely given the significant developments across the country in this area of the law. Kittell represents an extremely stringent view of intent from which many states have since evolved. See Mead, 2004 VT 11, ¶ 13 (summarizing cases). The West Virginia Supreme Court of Appeals led the way in 1978 when it ruled that an employer could be held liable in tort for "wilful, wanton, and reckless misconduct." Mandolidis v. Elkins Indus., Inc., 246 S.E.2d 907, 914 (W.Va. 1978).[8]    During the 1980s and

---

[7] In dissent, Justice Burgess argued that by reversing summary judgment in the absence of any evidence that the employer had a specific intent to injure the claimant, the majority implicitly adopted a definition of intent broader than the specific-intent-to-injure standard of Kittell. Id. ¶ 32 (Burgess, J., dissenting).

[8] The West Virginia legislature fleshed out this holding by statute in 1983. West Virginia law currently requires a showing that "the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee," or "[t]hat the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition." W. Va. Code Ann. § 23-4-2(d)(2)(A)-(B). A specific unsafe working condition is defined as "a violation of a state or federal safety statute, rule or regulation, whether cited or not,

18

1990s, several other states followed suit by broadening their definition of intent for purposes of the exception to the workers' compensation exclusivity bar. Courts in Connecticut, Louisiana, Michigan, New Jersey, North Carolina, Ohio, Oklahoma, South Dakota, and Texas have held that an employer could be sued in tort if it knew that its conduct was "substantially certain" to cause injury or death to an employee. Suarez v. Dickmont Plastics Corp., 639 A.2d 507, 512 (Conn. 1994); Bazley v. Tortorich, 397 So. 2d 475, 482 (La. 1981); Beauchamp v. Dow Chem. Co., 398 N.W.2d 882, 893 (Mich. 1986); Millison v. E.I. du Pont de Nemours & Co., 501 A.2d 505, 514 (N.J. 1985); Woodson v. Rowland, 407 S.E.2d 222, 228 (N.C. 1991); Fyffe v. Jeno's, Inc., 570 N.E.2d 1108, 1112 (Ohio 1991); Parret v. UNICCO Serv. Co., 2005 OK 54, ¶ 25, 127 P.3d 572; VerBouwens v. Hamm Wood Prods., 334 N.W.2d 874, 875-76 (S.D. 1983); Reed Tool Co. v. Copelin, 689 S.W.2d 404, 407 (Tex. 1985).[9] Some lower New York courts have also recognized this modern test. Acevedo v. Consol. Edison Co. of N.Y., 596 N.Y.S.2d 68, 71 (App. Div. 1993); Finch v. Swingly, 348 N.Y.S.2d 266, 268 (App. Div. 1973).

¶ 33. The following excerpt from a Connecticut Supreme Court opinion aptly summarizes the reasoning common to these decisions:

> The substantial certainty test differs from the true intentional tort test but still preserves the statutory scheme and the overall purposes of the [workers' compensation] act. The problem with the intentional tort test, i.e., whether the employer intended the specific injury, appears to be that it allows employers to injure and even kill employees and suffer only workers' compensation damages so long as the employer did not specifically intend to hurt the worker. Prohibiting a civil action in such a case would allow a corporation to "cost-out" an investment decision to kill workers. The "substantial certainty" test provides for the "intent to injure"

---

or of a commonly accepted and well-known safety standard within the industry or business of the employer." Id. § 23-4-2(d)(2)(B)(iii).

[9] The Michigan, Ohio, and Oklahoma legislatures subsequently modified the scope of the exception in those states to return to a specific-intent standard. See Travis v. Dreis & Krump Mfg. Co., 551 N.W.2d 132, 142 (Mich. 1996); Houdek v. ThyssenKrupp Materials N.A., Inc., 2012-Ohio-5685, ¶ 23, 983 N.E.2d 1253; Okla. Stat. tit. 85A, § 5(B)(2).

exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself.

Suarez, 639 A.2d at 512 (citations and quotations omitted).[10]

¶ 34.   Some jurisdictions have adopted a third standard in defining "intent," requiring a showing that the employer had knowledge that the injury was "certain" or "virtually certain" to occur (as opposed to "substantially certain").  See Figueroa v. Delant Constr. Co., 118 So. 3d 272, 272 (Fla. Dist. Ct. App. 2013); Helf v. Chevron U.S.A., Inc., 2009 UT 11, ¶ 43, 203 P.3d 962; see also Mich. Comp. Laws Ann. § 418.131(1).

¶ 35.   Other courts have declined to adopt the substantial-certainty standard and chosen to remain with the stricter specific-intent test, for reasons including unwillingness to depart from precedent, the language of the particular statute involved, or concern that the broader standard will lead to abuse.  Fenner v. Mun. of Anchorage, 53 P.3d 573, 576-77 (Alaska 2002); Guerrero v. OK Foods, Inc., 230 S.W.3d 296, 298 (Ark. Ct. App. 2006); Schwindt v. Hershey Foods Corp., 81 P.3d 1144, 1147 (Colo. App. 2003); Limanowski v. Ashland Oil Co., 655 N.E.2d 1049, 1053 (Ill. App. Ct. 1995); Thornton v. W.E. Blain & Sons, Inc., 878 So. 2d 1082, 1086 (Miss. Ct. App. 2004); Valencia v. Freeland & Lemm Const. Co., 108 S.W.3d 239, 243 (Tenn. 2003); Birklid v. Boeing Co., 904 P.2d 278, 285 (Wash. 1995).

¶ 36.   Given these varied approaches, and this Court's own established restraint on the subject, I would not resolve this question today.  Not only do we not need to, but plaintiff does not

---

[10] These decisions do not necessarily equate the applicability of the worker's compensation statute and the scope of the exclusivity provision in the way Kittell did.  For example, in Suarez, the Connecticut Supreme Court rejected the argument that a claimant cannot pursue both worker's compensation benefits and a civil tort remedy for an injury intentionally inflicted by the employer. 639 A.2d at 514-16.  The court acknowledged that benefits would be subject to set-off to avoid double recovery, but explained that a rule requiring an injured worker to elect remedies at the outset, and prohibiting a worker intentionally injured by the employer from collecting workers' compensation benefits, would be a remedy in name only, leaving intentionally harmful conduct by employers unpenalized.  Id. at 514.

actually ask us to.  He argues that even accepting that this Court did not adopt the substantial certainty test in <u>Stamp Tech</u>, there is sufficient evidence here for a reasonable factfinder to infer an intent to injure by the employer.  Accordingly, we don't have before us comprehensive briefing to inform an analysis of the proper definition of "intent."  In my view, we should reserve a decision on the precise scope of the exception to the exclusivity provision for a case where the issue is more squarely presented.

¶ 37.    For these reasons, I concur in the mandate only with respect to the claim against defendant Connor Contracting.  I am authorized to state that Chief Justice Reiber joins this concurrence.

_____

Associate Justice